# EXHIBIT A

Filed
D.C. Superior Court
03/16/2017 09:20AM
Clerk of the Court

**IN THE SUPERIOR COURT FOR
WASHINGTON D.C.
CIVIL DIVISION**

| | | |
|---|---|---|
| **Martin Dougherty,**<br>**12500 Quiverbook Court**<br>**Bowie, MD 20720.** | ) ) ) | |
| | ) | **Case No:** 2017 CA 001675 B |
| **vs.** | ) | |
| | ) | Jury Demand |
| **Cable News Network, Defendant.**<br>**8201 1st Street. NE**<br>**Washington D.C 20002** | ) ) | For Violations of the: D.C. Human Rights Act, the D.C. Family Medical Leave Act, the D.C Wage Payment Collection Law & Breach of Contract |

INTRODUCTION

The Plaintiff Martin Dougherty (Dougherty) by and through his undersigned counsel Dhali PLLC brings this action for (i) age, disability discrimination and retaliation under the D.C. Human Rights Act (DCHRA), (ii) interference and retaliation under the D.C. Family Medical Leave Act (DCFMLA) and for (iii) non-payment of wages under the D.C. Wage Payment Collection Law (DCWPCL) and for breach of contract, against the Defendant, Cable News Network (CNN).

Dougherty has been a photojournalist with CNN since approximately 1999. As a Senior Photojournalist his job requires him to carry and use a 35 - 700 pounds of camera equipment to report on news stories around the country and the world.

On December 31, 2015, while working at Elkins Park, Pennsylvania, Dougherty suffers a work related injury and is taken to the "Einstein Medical Center." He is diagnosed with left knee patellar dislocation with effusion. He also begins his physical therapy in 2016. CNN is also informed of this injury in January 2016.

On February 11, 2016, Dougherty receives an express delivery from Maureen Dumond, CNN's Human Resources (HR) manager who informs him that because he had used all of his FMLA leave his position was being replaced. This was the first time that Dougherty was made aware of any FMLA leave, and that he had exhausted all of it. On February 16, 2016, Dougherty makes a claim for disability accommodations under the American Disabilities Act Amendments Act of 2008 (ADAAA). This request is ignored. He is then terminated on March 7, 2016, when he receives a voice mail form Dumond, informing him that his position has already been filled. An email sent on March 17, 2016 confirms his termination. He later learns that he was replaced by a younger individual in his 30 Mr. Scott Pisezek. Dougherty is 53 years old.

Finally, Dougherty also brings an action for unpaid wages while travelling on company time between assignments for the periods 2014-2015. Per CNN policy, these company sanctioned trips are to be paid.

Consequently, Dougherty now files an action under the DCHRA, the DCFMLA, the DC Wage Laws and for breach of contract for non-payment of wages.

## Part I. Parties

1. The Plaintiff Martin Dougherty is a 53 year old male and has been an employee of the defendant CNN since approximately 1999. He was employed as a Senior Photojournalist. He reported out of the Washington D.C Office. He was terminated on March 7, 2016, while suffering a disability. Dougherty is an employee under D.C. Code § 2-1401.02 (9) of the DCHRA; under D.C. Code 32-501(1) of the DCFMLA and § 32-1301 of the DCWPCL.
2. The Defendant CNN is an international broadcasting and news company with thousands of employees within the United States and worldwide. CNN is an employer under D.C.

Code § 2-1401.02(10) of the DCHRA; D.C. Code 32-501(2) of the DCFMLA and § 32-1301 of the DCWPCL.

**Part II. Jurisdiction & Venue**

3. This Court has subject matter jurisdiction over his DCHRA claims under D.C. Code Ann. § 11-921; over his DCFMLA claims under D.C. Code § 32-510 and his wage claims under § 32-1308.
4. Venue is also proper in Washington D.C because Dougherty was employed in Washington D.C, and was also removed and terminated from his assignments in Washington D.C.

**Part III. Exhaustion of Administrative Remedies**

5. Dougherty filed his claim of sex, disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC) on March 14, 2016. On June 14, 2016, he amended his charge with the EEOC and also alleged a claim for age discrimination, charge number 570-2016-01026. All of these claims were also cross filed with the D.C Office of Human Rights (OHR).
6. There are no exhaustion requirements under the DCHRA, the DCFMLA and the DC Wage Laws.

**Part IV. Statement of Facts**

7. Dougherty is 53 years old. He was employed as a Senior Photojournalist with CNN. As part of his job duties he was required to lift 35-700 pounds of camera and broadcast news equipment to various job locations and assignments around the country.
8. On or about December 31, 2015, sometime around 9 or 9:15 am, Dougherty was taken to the "Einstein Medical Center" after suffering a work related injury while on assignment

in Elkins Park, Pennsylvania. The Emergency Room (ER) doctor diagnosed him with left knee patellar dislocation with effusion. He is advised to seek further treatment upon his return to Washington D.C. Dougherty's Supervisor Oliver Janney meets him at the Einstein Medical Center and arranges for his transport back to Washington DC area.

9. On January 1, 2016, Dougherty calls the "Washington Orthopedics & Sports Medicine" (WOSM) clinic to make an appointment. They are closed for the holiday.

10. On this same day, CNN's Risk Management department is also notified of a work related injury.

11. On January 5, 2016, Dougherty visits WOSM and is seen by Jonas R. Rudzki, M.D.

12. Dr. Rudzki diagnoses him with a reduced patellar dislocation with effusion (a dislocation of the knee). He is deemed totally incapacitated pending an MRI review. He is placed on a knee brace and crutches.

13. On January 11, 2016, after reviewing his MRI, Dr. Rudzki diagnoses him with a "medical retainacular tear involving the MPFL and well as sequelae of a lateral patellar dislocation with a TTTG distance of 9 mm." He is told to continue with his brace and crutches and to receive physical therapy. He is told by Dr. Rudzki to return for an assessment in 6-8 weeks.

**Protected Activities**

14. Also on January 11, 2016, Dougherty shares this information with his Washington D.C., managers Dough Schantz and Oliver Janney (aka "OJ"), and that he may be cleared for return to work by March 7, 2016, after he completes his weekly sessions of physical therapy (PT).

15. The CNN HR Manager Maureen Dumond via email on February 11, 2016, also acknowledges that Dougherty had spoken about this matter with Schantz and OJ, and that he may be cleared to return to work by March 7, 2016.

16. HR Manager Dumond has the power to hire and fire employees.

17. Dumond also has a familiarity and understanding of the Family Medical Leave Act and the American Disabilities Act.

18. On January 22, 2016, Dougherty starts his 6-8 weeks of physical therapy.

19. About two weeks later or on February 11, 2016, on the same day that Dumond also sent him an email on his treatment (¶ 15) he receives an overnight DHL package and letter from Dumond, dated February 10, 2015, informing Dougherty

> "As previously noted in the letter you received from The Hartford dated January 8, 2016, your leave is ineligible for coverage under the Family Medical Leave Act (FMLA) because you have already exhausted leave entitlement ..." And "In order to meet the pressing business and operational needs, moving forward the Company will no longer be able to keep your position unstaffed and will take steps to fill the position as soon as possible."

20. This email also informed him that he will remain on "personal leave until December 31, 2016 and also states his personal leave will begin once he is off medical disability leave."

21. This was the first time that Dougherty was even aware that he was on FMLA leave and or that he had exhausted it. Dougherty does not recall completing or signing any FMLA leave of absences or application for CNN.

22. CNN too does not have any signed FMLA applications from Dougherty for 2015 or 2016.

23. Dougherty also did not receive any letter from "The Hartford" dated January 8, 2016.

24. Dougherty is also suspicious that the letter is dated February 10, 2015, since on February 10, 2015, Dougherty informed his manager Shantz that he would be having surgery for a

torn rotator cuff. CNN initially refused to pay for this surgery and did so only after Dougherty filed a complaint with the D.C. Workers Compensation Board to compel CNN for pay for this surgery. This surgery did eventually occur on March 4, 2015, and he was out on worker's compensation leave until October 15, 2015.

25. After receiving the letter from CNN and Dumond, Dougherty telephones the CNN Field Production person, Jeff Kinney.

26. Kinney is the manager for Dougherty's division.

27. Dougherty asks Kinney "what is going on and why are CNN replacing me while I am out on medical rehabilitation?" Dougherty begs to complete his PT and visit his physician for a re-assessment before CNN terminates him.

28. Kinney informs Dougherty that "they [CNN] can't do that [wait on Dougherty to finish PT and be re-assessed by Dr. Rudski]."

29. Dougherty asks Kinney if he will have a job after he sees a doctor on March 7, 2016.

30. Kinney replies by saying, "you are putting me in a very uncomfortable position."

31. Dougherty informs Kinney that he will be speaking with Dumond on February 12, 2016; Kinney asks him to call him after Dougherty's conversation with Dumond. He does so, but never hears back from Kinney.

32. Dougherty also calls his DC manager Shantz around 9 pm on this same day February 11, 2016. Dougherty asks Shantz "how is it that CNN are replacing me and not giving me a chance to complete my rehabilitation?"

33. Shantz informs him that Dumond told him (Shantz) that "because Martin does not have a return to work date, he was out indefinitely."

34. Dougherty replies that he could be cleared to return to work on March 7, 2016. He also informs Shantz that he was open to coming in to help on the crew assignment desk, but was told by CNN that he cannot return to work unless he had zero restrictions and was one hundred percent (100%) healed.

35. There is no requirement under the ADA that an employee be 100% healed before an employee can return to work.

36. CNN and Dumond too are aware of this requirement.

37. Dougherty had worked on the CNN assignment desk since 1999 and also worked on the assignment desk on December 24, 2015 and December 25, 2015. Additionally, in 2009/2010, while out on workers compensation leave, Dougherty would regularly come in to work at the Crew Assignment Desk.

38. Dougherty was perplexed why CNN could not accommodate him now.

39. Shantz advised Dougherty that he should go back to Dr. Rudzki before March 7, 2016, and try to return to work.

40. Dougherty then emails Dumond to speak with her. A telephone conversation was then held on January 12, 2016, with Dumond.

41. Dougherty informs Dumond that he never told anyone that he had an "indefinite" return to work date.

42. Dr. Rudzki too had confirmed this and in his note dated January 11, 2016, Dr. Rudzki only says that Dougherty is totally incapacitated for 8 weeks.

43. Eight weeks is not an indefinite return date.

44. Dougherty had provided this information to Dumond and it is also in his medical records sent to Paul Miller of Turner Risk Management.

45. Dumond advises Dougherty that she "does not want to see those medical records."
46. She asks Dougherty for a definitive return date with "no work restrictions."
47. Dougherty informs Dumond he won't know that until he sees Dr. Rudzki on March 7, 2016. He also informs her that it is up to Dr. Rudzki if he has any work restrictions. He asks her to hold his position until March 7, 2016, as an ADA accommodation or until such time he has seen his doctor.
48. Dumond refused to hold his position until March 7, 2016.
49. Dumond then informs Dougherty that CNN has already proceeded to recruit Dougherty's replacement.
50. Dougherty again asks Dumond to hold off on any recruitment since he was about 3 weeks away from meeting Dr. Rudzki for a reassessment.
51. Dumond says, "we have already waited 5 weeks and it is what it is."
52. Dumond also says, if even a verbal job offer is made to someone, that would mean that Dougherty is out of a job.
53. On February 15, 2015, Dougherty has a phone conversation with CNN Field Production Manager Oliver Janney ("OJ").
54. OJ informs Dougherty that he did not know what HR was doing and that Dumond, "holds the cards close to her chest." He said "I am sorry that this is happening to you."
55. OJ like Shantz also asked Dougherty to visit Dr. Rudzki before his scheduled March 7, 2016, appointment.
56. On February 17, 2016, Dougherty emails Dumond, subject "Accommodation request under ADA"
57. This February 17, 2016, ADA email to Dumond says,

> Hi, I am requesting accommodation under the ADA (American Disabilities Act). Please let me know who else might need to be contacted and any documentation you might need from me.

58. Dumond acknowledges receipt of this ADA email in a voice mail to him dated February 19, 2016. She is however dismissive of the request and says, "you made it before you went to the doctor!"

59. There is no requirement under the ADA that an employee can only make an ADA request after meeting a physician.

60. On February 19, 2016, Dougherty visits Dr. Rudzki and he clears him for light duty for 8 weeks beginning from 2/19/16[1]. Dr. Rudzki also requests the following accommodations from CNN for Dougherty:

> Please provide Martin Dougherty with access to the following equiptment as these devices will reduces the stress and strain on his shoulder, preserving the integrity of the rotator cuff repair, and avoid recurrent instability of his Left knee (s/p lateral patellar dislocation), and reducing the risks of additional procedures:
>
> Sachtler Monopod Carbon Fiber with Sandwich touch and go system - supports 33lbs
> Easyrig Cinema 3 Stabilizing Camera Support
> Sachtler 1096 Quick Release Plate.
>
> Thank you for accommodating the patient's medical needs.
>
> Please contact my office directly with any questions or concerns.

61. On this same day or February 19, 2016, Dougherty after visiting Dr. Rudzki, immediately rushes to the CNN office in Washington D.C., located at 820 1st Street. NE., with the above medical note and accommodations request in hand. He arrives at 4:15pm and hand delivers the above medical note for ADA accommodations to his manager Shantz.

[1] This ADA accommodations request is an updated request from the one provided to CNN dated 11/18/2015 from Dr. Rudzik. This Nov 2015 ADA request was also never fulfilled by CNN.

62. Knowing that CNN would make up some further excuse for not receiving the above note, Dougherty as a fail-safe, further scans the note and also emails it to Dumond.

63. Both Shantz and Dumond now are in possession of the ADA accommodations request from Dr. Rudzik dated 2/19/2016.

64. Dumond calls him back and informs him that the ADA accommodations request note from Dr. Rudzik is not good enough and that she wanted more specifics.

65. Under the ADA as part of the interactive process, the HR Manager has the authority to contact the medical provider directly regarding clarifications for an ADA accommodations request.

66. Dougherty told Dumond that he was at CNN offices in D.C. and personally dropped off the note with Shantz.

67. Dumond exploded with rage. She was incensed that Dougherty was on CNN work premises while on medical leave communicating with his supervisor on a medical matter.

68. Dumond threatened to have his building access card revoked and deactivated.

69. Dougherty also found the admonition and retaliation disconcerting since he had also been on medical leave in 2008 on another worker's compensation matter, had frequently dropped by the office and never once was he told that his building access card would be revoked or deactivated. Other CNN employee's on medical leave have also been at the CNN DC Bureau for training purposes.

70. He understood this threat as retaliatory under the disabilities act as it had the effect of preventing him from further engaging in activities, or reporting or communicating about activities under the ADA or the FMLA.

71. CNN does not have a written policy of prohibiting an employee to visit his work site while on medical leave or on worker's compensation leave.

72. On February 19, 2016, Dougherty for the first time applies for FMLA leave on CNN's intranet site. He is denied coverage.

73. On February 22, 2016, around 12:46 am, Dougherty sends an email to Dumond enquiring about the ADA accommodations outlined by Dr. Rudzik in his medical note dated 2/19/2016.

74. She replies by saying, she would "discuss whether this is something we can accommodate with your management team should you be cleared to return to work before we fill your position."

75. Dr. Rudski's 2/19/2016 note had already cleared him to return to light duty with restrictions from this date.

76. Dumond did not ask Dougherty to be involved in any discussions with his management team.

77. The 2/19/2016 ADA accommodation request by Dr. Rudzik was for equipment commonly used within the television and news reporting industry.

78. CNN would have suffered no undue hardship in providing these accommodations to Dougherty so as to allow him to be a qualified individual with a disability.

79. Had the accommodations sought by Dr. Rudzik been provided to Dougherty by CNN, he would have been a qualified individual with a disability.

80. On February 22, 2016, Dougherty provided CNN and Dumond with another ADA light duty request form from Dr. Rudzik and emails the following:

Hi all, I just received this RX at around 11:22 pm Monday so am forwarding now. With this I ask that I be reinstated to employment with accommodations pursuant to my earlier ADA accommodation request. My Physical Therapy appointments I can make around whatever schedule you need me to work. Thank you!

81. Dumond acknowledges receipt of this ADA form and replies "I will review with your management team and get back to you."

82. On February 25, 2016, Dumond again sends Dougherty an email saying:

It is not clear how long these restrictions are needed so we are reaching out to your doctor for clarification. If you'd like to speak to your doctor and help move the process along, please do so.

83. On the same day February 25, 2016, Dougherty then emails Shantz and Janney (OJ) saying:

I am available to work on the interactive process and "figure out what kinds of accommodations can be effective and practical for everyone…and work together to find a reasonable solution. thanks and hit me up!"

84. Shantz replies back saying, "We are still working through things."

85. No discussions on ADA accommodations were held with Dougherty.

86. On March 7, 2016, Dougherty receives a voice mail from Dumond informing him that because his position was already posted before receiving any ADA accommodations request from him, they were already far along in hiring someone for his position.

87. On March 17, 2016, Dougherty receives an email from HR saying, he is no longer an active employee because his position has already been filled.

88. His email was then turned off. His access to the company intranet was terminated and he was told to turn in his ID card.

89. Per CNN's employee handbook when in this case his termination letter says that he is on "Personal Leave until December 31, 2016" Dougherty is to have access to job search tools on *MYHR* a CNN job search website, generally available to active employees.

90. Dougherty instead was denied access.

91. He was then replaced by a younger individual Mr. Scott Pisezk in his 30s.

92. Pisezk may quite possibly also never have requested any accommodations under the ADA or asked for FMLA leave.

93. Had CNN provided Dougherty with the accommodations sought by Dr. Rudski or engaged in the interactive process, Dougherty would have been qualified to perform work on the assignment desk; crew assignment desk and/or technical operations, and courier.

94. A technical operation is where Dougherty would be sitting on a desk and monitoring incoming and outgoing video feeds and managing photojournalist's in the field. In the past while coming back from work injuries, Dougherty was afforded the opportunity to work the crew assignment desk or work at remote assignments such as on the White House North Lawn or Russell Rotunda live shot position.

95. Also in the past, Dougherty had worked on the assignment desk off and on for 17 years for CNN.

96. Accommodating Dougherty by having him assigned to work at the assignment desk, crew assignment desk, a technical operations or courier would not have been an undue hardship for CNN.

97. Since his termination Dougherty continues to apply for positions within CNN and has been rejected for all of them.

98. Finally, other individuals who have applied for and provided light duty while being on medical leave or as a form of accommodation under the disability act include: Kim Uhl (White Female); John Bodnar (While Male), Ken Tuohey (White Male), David Jenkins (White Male) Tim Garraty (White Male), David Catrett (White Male). John Henry Bena (White Male) and Reggie Selma (African American Male) have been accommodated due to personal issues that prevented them from performing the essential functions of their jobs..

99. Plaintiff too requested light duty and accommodations, but was terminated instead.

**Plaintiff's Unpaid Wage Claims**

100. Dougherty also brings an action for unpaid wages against CNN, while travelling during assignments.

101. Per their HR or Company Manual, all employees are to be compensated during their travel time, including in this case, travels from the home to the airport, train station etc. and travels between assignments.

102. Dougherty has not been paid while travelling.

103. Dougherty alleges that for his travels for the 2014 and 2015 periods, he and others similarly situated like him is owed the following unpaid wages from the defendant.

| Year | Approximate FLSA Wages Lost |
|---|---|
| 2014 | 15,000 - $20,000 |
| 2015 | $5,000 – $10,000 |
| | Total: 30,000 |

**Part V. Causes of Action**
**Count I. Interference Under the DCFMLA**

104. Plaintiff reincorporates by reference all the allegations above.

105. The D.C Family Medical Leave Act (DCFMLA) provides an eligible employee for a total of sixteen (16) workweeks of medical leave during any twenty four (24) month period when the employee becomes unable to perform the functions of his job. An employee may bring a claim under the DCFMLA when he has suffered damages as a result of the denial. *See* D.C. Code § 32-501 et. seq.

106. In order to prevail on his DCFMLA claim, he must (1) have a serious health condition; (2) be unable to perform the functions of his job; (3) provides reasonable notice to take leave to CNN; (4) CNN wrongfully denied the leave and (5) he suffers a legal injury because of the denial. *See* D.C. Code 32-507; *Pendarvis v. Xerox*, 3 F.Supp. 2d. 53, 55 (D.D.C. 1998).

107. Dougherty had a serious health condition of lateral patellar dislocation, which prevented him from performing the functions of his job. Daugherty provided his employer with notice to take this leave beginning on January 1, 2016 until the date of his termination on March 2016.

108. Defendant denied this leave, and he suffered legal injury when they terminated him on March 17, 2016.

109. Defendant's acts caused Plaintiff to suffer economic losses, physical injury, mental and emotional distress, embarrassment, humiliation and indignity.

110. This intentional, reckless, and/or willful act by the part of Defendant's constitutes a violation of Plaintiff's statutory rights under the DCFMLA.

111. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies under the DCFMLA, including his attorney's fees.

**Count II. Retaliation Under the DCFMLA.**

112. Plaintiff reincorporates by reference all the allegations above.

113. Under the DCFMLA it is illegal for the Defendant's to discharge or discriminate in any manner, against an individual for opposing any practice made unlawful under the DCFMLA. *See* D.C Code § 32-507.

114. In the present instance, the Plaintiff engaged in protected activity when he requested medical leave for all periods beginning on January 1, 2016, and thereafter.

115. The Defendant denied this leave and terminated the Plaintiff by leaving a voice mail on March 10, 2016, and sending him an email on March 17, 2016.

116. Because of the close proximity of the materially adverse actions, it creates an inference of a causal connection that would dissuade a reasonable employee from filing a claim.

117. Defendant's acts caused Plaintiff to suffer economic losses, physical injury, mental and emotional distress, embarrassment, humiliation and indignity.

118. This intentional, reckless, and/or willful act by the part of Defendant's constitutes a violation of Plaintiff's statutory rights under the DCFMLA.

119. By reason of Defendant's actions, the Plaintiff is entitled to all legal, liquidated and equitable remedies and penalties under the DCFMLA, including his attorney's fees.

**Count III. Disability Discrimination under the DCHRA**

120. Plaintiff re-incorporates by reference all the allegations above

121. At all present times Defendant CNN was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

122. At all pertinent times, Plaintiff Martin Dougherty was entitled to protections under the D.C. Human Rights Act.

123. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation on the basis of disability and age.

124. Defendant and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of his disability by treating him differently from and less preferably then similarly situated employees outside of Plaintiff's protected class, in violation of the DCHRA.

125. Defendant knew or should have known of the types of discrimination that Plaintiff suffered.

126. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

127. Defendant's acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

128. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

129. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including its attorney's fees.

**Count IV. Failure to Accommodate under the DCHRA**

130. Plaintiff alleges and incorporates all the above allegations.

131. CNN was at all times an employer of the Plaintiff for purposes of the DCHRA.

132. The Plaintiff is a disabled individual with physical impairments that substantially limits one or more major life activities under the American Disabilities Act Amendments Act of 2008 (ADAAA) and the DCHRA disability laws, in this case: walking, standing, sitting, concentrating, thinking, communicating, interacting with others, and working.

133. At all times of Plaintiff's employment, CNN had knowledge of his disability or perceived disability. Plaintiff also has a record of such impairment.

134. The Plaintiff informed CNN of his disability and request for reasonable accommodations.

135. The Plaintiff alleges that one or more of the agents, managers, or supervisors of CNN failed to accommodate his disability and/or engage in the interactive process with the Plaintiff and/or his physician, to determine an appropriate and reasonable accommodation as required under the ADAAA and the District's disability laws. Had the Defendant engaged in the interactive process, a reasonable accommodation would have been identified, allowing him to perform the essential functions of his job.

136. The Defendant subsequently not only failed to engage in the interactive process, but also denied all requests for reasonable accommodations, and subjected the Plaintiff to adverse employment actions, and then subsequently terminating him in March 2016.

137. The Defendant is unable to show that the accommodations requested would have imposed "an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5).

138. As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and

advancement opportunities, and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

139. As a consequence of Defendant's actions CNN is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

**<u>COUNT V. Retaliation under the DCHRA</u>**

140. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

141. At all pertinent times Defendant was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et.seq* of the District of Colombia Code.

142. At all pertinent times, Plaintiff was entitled to protection under the DCHRA.

143. The DCHRA makes it an "unlawful discriminatory practice to coerce, threaten, retaliate against or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter."

144. Plaintiff engaged in protected activities and opposition to practices made unlawful under the DCHRA while employed by Defendant CNN.

145. As a result of his protected activities and opposition to practices made unlawful under the DCHRA, Plaintiff was subjected to adverse employment actions, including

termination and other adverse employment conditions that may well dissuade an employee from filing a claim of discrimination.

146. A casual connection exists between Plaintiff's protected activities and the adverse employment actions taken by Defendant.

147. Defendant's acts of retaliation caused Plaintiffs to suffer economic losses, physical harm, mental and emotional distress, embarrassment, humiliation and indignity.

148. This intentional, reckless, and/or willful retaliation by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the DCHRA.

149. By reason of Defendant's retaliation, Plaintiff is entitled to all legal and equitable remedies under the DCHRA, including his attorney's fees.

**Count VI. Age Discrimination Under the DCHRA**

150. Plaintiff reincorporates by reference all the allegations above.

151. At all present times Defendant CNN was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

152. At all pertinent times, Plaintiff Martin Dougherty was entitled to protections under the D.C. Human Rights Act.

153. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation on the basis of age.

154. Defendant and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of his age by treating him differently from and less preferably then similarly situated employees outside of Plaintiffs protected class, in violation of the DCHRA, only to then terminate him and replace him with a younger employee than the Plaintiff.

155. Defendant knew or should have known of the types of discrimination that Plaintiff suffered.

156. Defendant's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

157. Defendant's acts of discrimination caused Plaintiff to suffer economic losses, mental and emotional distress, physical injury, embarrassment, humiliation and indignity.

158. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

159. By reasons of Defendant's discrimination, Plaintiff is entitled to all legal and equitable remedies under the DCHRA including his attorney's fees.

**Count VII. D.C. Wage Payment and Wage Collection Act**

160. Plaintiffs allege and incorporate by reference all of the above allegations.

161. Under the D.C. Wage Payment and Wage Collection Act, every employer shall pay all wages earned to his employees at least twice during each calendar month, on regular paydays designated in advance by the employer; provided, however, that an interval of not more than 10 working days may elapse between the end of the pay period covered and the regular payday designated by the employer.

162. Upon observation and belief, there was no bona fide dispute over the amount of wages conceded to be due. Defendants have violated the D.C. Wage Payment and Wage Collection Law when it withheld all wages for its photojournalists incurred while travelling.

163. Due to Defendants' D.C. Wage Payment and Wage Collection Law violations, the named Plaintiff is entitled to his compensation and liquidated damages in an equal

amount pursuant to D.C. Code 32-1308(a), plus all other relief, including his attorney's fees.

**Count VIII. Breach of Contract**

164. Plaintiff reincorporates by reference all the allegations above

165. CNN and employee entered into a contract for wages to pay him during his travels.

166. By breaching this contract of employment for wages, CNN are additionally liable to the Plaintiff for breach of contract.

**Part VI. Prayer for Relief**

WHEREFORE, the Plaintiff prays that this Honorable Court:

A. Declare that the Defendant's committed one or more of the following acts:

(i). Knowingly violated the D.C. Wage Payment and Collection Law, with respect to Plaintiff Martin Dougherty;
(ii). Discriminated against him on the basis of age and disability in violation of the D.C Human Rights Act;
(iii). Retaliated against him for engaging in protected activities under the DCHRA;
(iv). Interfered and retaliated against him under the D.C. FMLA; and
(v). Breached the contract for wages by not paying him during his travels.

B. That the Court award Plaintiff damages in the amount equal to all of his accumulated lost wages and benefits, including back pay, front pay and benefits, punitive damages, and compensatory and emotional damages for the financial, physical and emotional harm caused by Defendant, including pre-judgment and post judgment interest and any other damages permitted under the D.C. Wage Laws, the D.C Human Rights Act (DCHRA), the D.C. Family Medical Leave Act (DCFMLA), and for breach of contract, in an amount to be determined by this Court;

C. That the Court also award Plaintiff payment of all fees, costs and expenses inclusive of attorney's fees and expert fees and any and all other remedies that the Plaintiff maybe entitled to by all the laws and this Court.

**Part VII. <u>Jury Demand</u>**

Plaintiff requests a trial by jury on all counts.

Respectfully Submitted,

Dhali PLLC

<u>/s/A.J Dhali, Esq.</u>

DC Bar No. 495909
Dhali PLLC
1828 L. Street. NW. Suite 600.
Washington D.C. 20036
Telephone: (202) 556-1285
Fascimile: (202) 351-0518
ajdhali@dhalilaw.com

Thursday March 15, 2017

***Attorney for Plaintiff Martin Dougherty***

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

Martin Dougherty

Plaintiff

vs.

Case Number 2017 CA 001675 B

Cable News Network

Defendant

## SUMMONS

To the above named Defendant: David Vigilante, Sr.Vice President of CNN

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

A.J Dhali. Dhali PLLC
Name of Plaintiff's Attorney

*Clerk of the Court*

1828 L. Street. NW. Suite 600
Address Washington D.C. 20036

By ______ Deputy Clerk

202-556-1285. E:ajdhali@dhalilaw.com
Telephone

Date 03/16/2017

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

MARTIN DOUGHERTY
Vs. C.A. No. 2017 CA 001675 B
CABLE NEWS NETWORK

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge BRIAN F HOLEMAN
Date: March 16, 2017
Initial Conference: 9:30 am, Friday, June 16, 2017
Location: Courtroom 214
500 Indiana Avenue N.W.
WASHINGTON, DC 20001

## ADDENDUM TO INITIAL ORDER AFFECTING ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Robert E. Morin