# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARTIN DOUGHERTY,                  :
                                   :
    Plaintiff,            :         Civil Action No.:    17-769 (RC)
                                   :
v.                                 :         Re Document No.:     28
                                   :
CABLE NEWS NETWORK,                :
                                   :
    Defendant.            :

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Martin Dougherty brings this suit against Defendant Cable News Network ("CNN") for multiple violations of the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01 to -1404.04, interference with and retaliation for exercising his rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–54, and the D.C. Family and Medical Leave Act ("DC FMLA"), D.C. Code §§ 32-501–17, as well as breach of contract and violation of the D.C. Wage Payment and Wage Collection Law, D.C. Code § 32-1301–12. Dougherty, a photojournalist employed by CNN between 1998 and 2016, alleges that the company refused to give him medical leave or to otherwise accommodate him after he suffered a knee injury in December 2015, and instead unlawfully terminated him and replaced his position.

CNN has now moved for summary judgment on all claims. The Court first dismisses Dougherty's breach of contract and wage claims, which he has voluntarily withdrawn. Because CNN has not shown that Dougherty was unable to perform the essential functions of the photojournalist position, and because there remains a genuine issue of material fact as to whether CNN's asserted legitimate, non-discriminatory reason for his termination was pretextual, the

Court denies the motion for summary judgment as to Dougherty's DCHRA claims. And finally, finding that Dougherty was not eligible for either FMLA or DC FMLA leave at any point between January 1, 2016 and March 17, 2016, the Court grants CNN's motion for summary judgment as to Dougherty's FMLA and DC FMLA interference and retaliation claims. The Court accordingly grants in part and denies in part CNN's motion for summary judgment. Having granted summary judgment on all federal claims, the Court directs the parties to provide supplemental briefing on the issue of whether it retains jurisdiction to adjudicate Dougherty's state law claims.

## II. BACKGROUND

### A. The Photojournalist Position at CNN

A photojournalist at CNN "is a cameraman who is responsible for gathering news and shooting video of the news." Def.'s Statement of Material Facts ("SMF") ¶ 5, ECF No. 28; *see also* CNN Photojournalist Job Posting Description, Pl.'s Opp'n Mot. Summ. J. Ex. 4, ECF No. 36-5 ("CNN Photojournalists are responsible for recording images to illustrate CNN news events and stories"). Unlike CNN cameramen, who acquire video "for a multitude of different things," such as "commercials, production houses, . . . [or] television shows," photojournalists have a "narrow focus" on gathering video for news production. Bena Dep. 9:4–11 , Pl.'s Opp'n Mot. Summ. J. Ex. 3, ECF No. 36-4.[1] Because of staffing needs, photojournalists are not permanently assigned. *See* Courtney Dep. 96:9–17, Def.'s Mot. Summ. J. Ex. D, ECF No. 28-4. Instead,

---

[1] Plaintiff disputes CNN's description of a photojournalist as "a cameraman who is responsible for gathering news and shooting video of the news," Def.'s SMF ¶ 5, arguing that the title "is a fancy word for a camera person" and citing to Bena's deposition testimony, Pl.'s Opp'n 1 & 1 n.2, ECF No. 35-2. However, that very deposition testimony contradicts Plaintiff's argument, with Bena specifically indicating that photojournalists have a narrower focus than cameramen at CNN. *See* Bena Dep. 9:4–12.

CNN photojournalists typically receive their work assignments for the next day every day between 5:00 PM and 7:00 PM. Schantz Dep. 152:9–19, Def.'s Mot. Summ. J. Ex. C, ECF No. 28-3.

Photojournalist assignments in the Washington, D.C. area include several "stand-up locations," where photojournalists are expected to shoot standing subjects for extended periods of time. *See* Courtney Dep. 95:2–9, Def.'s Ex. D. [2] Some of these stand-up locations include a stationary live camera in the Russell Rotunda of Congress whenever it is in session, Janney Dep. 33:1–3, Pl.'s Opp'n Mot. Summ. J. Ex. 12, ECF No. 34-13, a stationary live camera on the house side of the Capitol building, *id.* at 33:10–12, Pl.'s Ex. 12, and a stationary live camera on the north lawn of the White House whenever the President is in Washington, *id.* at 33:6–8, Pl.'s Ex. 12. Other stand-up locations sporadically may involve shots at the State Department or Pentagon. *See id.* at 33:17–20, Pl.'s Ex. 12. However, because photojournalists are first and foremost expected to contribute to reporting on breaking news, they may be called to relocate from stand-up locations and to respond to developing situations as they arise. *See, e.g.*, Schantz Dep. 56:6–20, Def.'s Ex. C. Photojournalists filming on the north lawn of the White House, for instance, are "responsible for any security incidents that happen." *Id.* at 100:19–20, Def.'s Ex. C. Similarly, while the Russell Rotunda assignment is "a relatively low impact day," Janney Dep. 47:18, Pl.'s Ex. 12, photojournalists may be called to quickly leave the position to respond to breaking news, *see id.* at 49:9–17, Pl.'s Ex. 12. And because a journalist must do "whatever it

---

[2] In their briefs, both parties only provide very limited excerpts of the deposition transcripts for the individuals deposed in this case. As a result, not only is the Court restricted in its ability to determine the context behind answers to questions asked at the depositions, but some deposition transcript pages included as exhibits to a party's briefs are not included in the other's, and vice-versa. For clarity, when citing to deposition testimony both parties rely on, the Court notes to which party's exhibit it is citing.

takes to gather news," Dougherty Dep. 86:1–2, Def.'s Mot. Summ. J. Ex. B, ECF No. 28-2, relocating may involve walking, running, or going up or down stairs to get to a new location.

A photojournalist with CNN may receive a number of other assignments. At times, photojournalists may be able to work at desk positions on the assignment desk. *See* Janney Dep. 114:7–21, Def.'s Mot. Summ. J. Ex. G, ECF No. 28–7. However, the assignment is only on an ad-hoc basis, as the position is worked full-time by employees who are not photojournalists. *See id.* Photojournalists may otherwise be assigned to a variety of news stories such as travelling with officials, covering local stories, or reacting to any type of breaking news. Kinney Dep. 46:13–47:14, Pl.'s Opp'n Mot. Summ. J. Ex. 6, ECF No. 36-7. "There is literally an infinite number of assignments that a CNN photojournalist could find themselves covering." *Id.* at 47:20–22, Pl.'s Ex. 6. Any such assignment may be quite physical, potentially involving not just standing, walking, and going up and down stairs—including when responding to breaking news at the Capitol building or White House, *see* Courtney Dep. 96:18–97:2, Def.'s Ex. D—but also "pushing heavy loads, . . . crawling, . . . standing in standing water, in a hurricane, navigating debris fields in tornado or hurricane damaged, very austere and hostile environments," *id.* at 50:22–51:4, Def.'s Ex. D.

### B. Dougherty's Employment at CNN Prior to December 2015

Dougherty is a 56-year old photojournalist who joined CNN in 1998. Dougherty Aff. ¶¶ 1–2, Pl.'s Opp'n Mot. Dismiss Ex. 48, ECF No. 36-49. During the course of his almost twenty-year career at the network, Dougherty was injured on a number of occasions, resulting in multiple surgeries. Dougherty had two knee surgeries in 2008, following which he was able to return to work on lighter duty in order to allow him to slowly get back to full working condition. *Id.* ¶ 7. In 2010, Dougherty had right foot surgery, after which he was again "reintegrated . . .

depending on [his] physical limitations" by CNN. *Id.* ¶ 8. However, after shoulder and neck injuries in 2012 and 2013, Dougherty contends that CNN was less understanding, refusing to accommodate work restrictions or to fully cover his disability and medical costs. *Id.* ¶¶ 9–10.

In December 2014, Dougherty injured his right shoulder again. *Id.* ¶ 11. Dougherty took medical leave on March 4, 2015 to undergo rotator cuff surgery. *Id.*; Ul-Haque Aff. ¶ 4, Def.'s Mot. Summ. J. Ex. H, ECF No. 28-8. While Dougherty was on leave for the surgery, CNN sent him multiple letters informing him that his leave qualified under the FMLA and that the FMLA leave would be exhausted on May 31, 2015. Ul-Haque Aff. ¶ 5; 2015 FMLA Leave Eligibility Letters, Ul-Haque Aff. Ex. 1. Dougherty claims that he never received the letters. Dougherty Aff. ¶ 21. Dougherty also claims that his supervisor at the time, Doug Schantz, told him that he could only return to work once he was cleared for "full duty." *Id.* ¶ 11. Dougherty returned to work at some point between the end of November and the beginning of December. *Compare* Dougherty Aff. ¶ 11 (claiming that Dougherty returned on December 3rd or 7th) *with* Ul-Haque Aff. ¶ 4 (noting that Dougherty was on leave between March 4, 2015 and November 23, 2015).

Dougherty's doctor, Jonas Rudzki, prescribed a list of equipment that would help alleviate future strain on Dougherty's shoulder, which Dougherty then provided to CNN. Dougherty Aff. ¶ 11; Nov. 18, 2015 Prescription, Pl.'s Opp'n Mot. Summ. J. Ex. 35, ECF No. 36-36. Rudzki noted in his deposition that when trying to determine what accommodations are reasonable for a patient, he listens to the patient's proposed accommodation and determines for himself whether such accommodation is reasonable. Rudzki Dep. 22:3–24:3, Pl.'s Mot. Summ. J. Ex. 43, ECF No. 36-44. In this case, the prescription included a recommendation for CNN to provide Dougherty with a monopod his camera, an EasyRig camera support system—which would allow Dougherty to transfer the weight of the video camera from his shoulder to his hips,

*see* Jenkins Dep. 66:3–12, 88:3–20, Pl.'s Opp'n Mot. Summ. J. Ex. 5, ECF No. 36-6; Dougherty Dep. 202:4–8, Def.'s Ex. B—and a quick release plate, Nov. 18, 2015 Prescription.  According to Dougherty, CNN never responded to the request.  Dougherty Aff. ¶ 11.

### C.  Dougherty's December 2015 Injury and Termination from CNN

On December 31, 2015, Dougerty injured himself on the job again.  Dougherty Aff. ¶ 14.  As Dougherty was stepping out of his CNN-provided vehicle after a shoot, his foot missed the car's running board and he landed on his left leg, dislocating his knee.  *Id.*  On January 5, 2016, Rudzki evaluated Dougherty and determined that he was totally incapacitated.  *Id.* ¶ 16.  Rudzki evaluated Dougherty again on January 11, determining that he would be fully incapacitated for eight weeks, with the injury to be re-assessed in six to eight weeks.  *Id.* ¶ 17.  Dougherty then informed Schantz and Oliver Janney, CNN's senior field production supervisor, of the injury.  *Id.*  Between January and February 2016, CNN sent multiple letters to Dougherty informing him that he had exhausted his FMLA leave.  Ul-Haque Aff. ¶ 10.  Dougherty represents that he did not receive those letters.  Dougherty Aff. ¶ 21.  On February 4, 2016, after determining that Dougherty had been entitled to DC FMLA at the time of his March 2015 leave for shoulder surgery, CNN elected to retroactively apply his DC FMLA leave to March 2015.  *See* February 4, 2016 CNN HR E-Mail, Pl.'s Opp'n Mot. Summ. J. Ex. 25, ECF No. 36-26.  CNN claims to have sent Dougherty an updated eligibility letter as a result, *see* Ul-Haque Aff. ¶ 10; 2016 FMLA Eligibility Letters, Ul-Haque Aff. Ex. 2, which Dougherty also claims not to have received, Dougherty Aff. ¶ 21.

By February 5, 2016, CNN determined that it would backfill Dougherty's position instead of waiting for him to return from leave.  *See* Feb. 5, 2016 CNN HR E-Mail, Pl.'s Opp'n Mot. Summ. J. Ex. 26, ECF No. 36-27.  A job posting was prepared on February 8, *see* Feb. 8,

2016 CNN HR E-Mail, Pl.'s Mot. Summ. J. Ex. 27, ECF No. 36-28, and on February 10, 2016, CNN sent Dougherty a letter formally informing him that the company would take steps to fill his position and was unable to guarantee that any position would be available for him after he returned from leave, *see* Feb. 10, 2016 Letter from CNN to Martin Dougherty, Pl.'s Opp'n Mot. Summ. J. Ex. 31, ECF No. 36-32. The letter indicated that Dougherty's position would have to be filled "[i]n order to meet pressing business and operational needs moving forward." *Id.* Separately, CNN HR prepared talking points to give CNN staff and Dougherty regarding his termination. *See* Feb. 10, 2016 CNN HR E-Mail, Pl.'s Opp'n Mot. Summ. J. Ex. 29, ECF No. 36-30. The talking points mentioned that Dougherty's replacement was due to the particularly high demands of the 2016 political season, with a "business justification" portion noting that CNN "plan[ned] to up-staff with temporary photojournalists in order to alleviate the strain of political coverage." *Id.*

After Dougherty received CNN's February 10, 2016 letter, he claims that he reached out to both Schantz and his other supervisor at the time, Jeffrey Kinney. Dougherty Aff. ¶¶ 22–23. According to Dougherty, Schantz informed him that he could not return to work unless he had no restrictions and was "100% healed." *Id.* ¶ 23. Dougherty then reached out to his HR manager, Maureen Dumond, who told him that CNN was already in the process of hiring someone else and would not hold the position open for him. *Id.* ¶ 24. Dougherty also claims that Dumond told him he could not return to work unless he was fully fit for duty, *id.*, a statement Dumond denies making, *see* Dumond Dep. 31:9–12, Def.'s Reply Supp. Summ. J. Ex. 1, ECF No. 44-1. On February 17, 2016, Dougherty made a request for an accommodation under the ADA to Dumond. Dougherty Aff. ¶ 26. Following the request, Dougherty claims that Dumond called him and was dismissive of the ADA request, stating "you made it before you went to the

doctor!" *Id.* ¶ 27.[3]  On February 19, 2016, Dougherty claims that he made a request for FMLA

leave for the first time, which CNN denied because his FMLA leave was exhausted.  *Id.* ¶ 29.

Following his ADA request, Dougherty again visited Rudzki, who cleared him to return

to light-duty.  *Id.* ¶ 28.  In connection with clearing Dougherty's return to light-duty, Rudzki

again issued a prescription for Dougherty to be provided with a monopod, EasyRig system, and

quick release plate.  Feb. 19, 2016 Prescription, Pl.'s Opp'n Mot. Summ. J. Ex. 36, ECF No.

36-37.  On February 22, 2016, Rudzki provided a more detailed list of the restrictions and

accommodations Dougherty would need for a return to light duty, including that he be "[a]ble to

work the Crew/Slot assignment desk," that he "avoid, for now, carrying equipment downstairs,"

and that he "[f]or now avoid running or walking with camera while shooting."  Feb. 22, 2016

Prescription, Pl.'s Opp'n Mot. Summ. J. Ex. 44, ECF No. 36-45.  Rudzki indicated that

Dougherty would be expected to be on light duty for about eight weeks.  *See* Feb. 19, 2016

---

[3] In its reply, CNN disputes both statements attributed to Dumond.  Def.'s Reply 2 n.3.
CNN contends that Dougherty fabricated those quotes, which it says are not supported anywhere
in the record, *see id.* at 2, and that "to continue to attribute these quotes to her . . . is improper
and unethical," *id.* at 2 n.3.  That characterization is incorrect in a number of ways.  As an initial
matter, the quotes *are* supported in the record, by Dougherty's affidavit (and, possibly, by his
deposition testimony, though the Court is unable to determine so absent the full transcript of his
deposition).  Just because CNN does not believe Dougherty's version of events does not fully
discredit it.  Furthermore, Dumond may have denied making the first quote at her deposition, but
CNN does not point to any evidence that she denied making the second one.  And CNN's
admonition that making representations to the Court unsupported in the record is "improper and
unethical," Def.'s Reply 2 n.3, is belied by the fact that CNN itself makes a number of such
representations in its statement of facts, citing to deposition testimony that it does not include in
its motion, *see, e.g.*, Def.'s SMF ¶ 16 (citing to Schantz Dep. 58:2–16); Def.'s SMF ¶ 54 (citing
to Dougherty Dep. 237:20–239:2).

More generally, the Court is far from impressed by the parties' representations based on
what they contend to be the evidence in the record.  The Court agrees with CNN that Dougherty
at times mischaracterizes the record, inaccurately quoting to or characterizing deposition
testimony.  But it strikes the Court as particularly ill-advised for CNN to argue that, "[i]n a
transparent effort to mislead this Court," Dougherty "relies on partial, incomplete portions of
deposition transcripts," Def.'s Reply 2, when, as discussed *supra*, CNN does the exact same
thing in both its motion and its reply.

Prescription 2. Dougherty forwarded the documents from Rudzki to CNN, *see* Def.'s SMF ¶¶ 34, 38, and CNN indicated that the proposed accommodations would be discussed with Dougherty's management team, *see id.* ¶¶ 37, 39. According to Dumond, at a meeting with Kinney, Schantz, and John Courtney—another CNN employee who provided executive oversight for photojournalists in DC—it was determined that Dougherty could not perform the essential functions of his job even with his proposed accommodations. Dumond Dep. 19:5–22, Def.'s Ex. J; *see also* Schantz Dep. 87:1–12, Def.'s Ex. C (noting that proposed accommodations "would help [Dougherty] but they wouldn't get him to the point where he could do the essential [sic] accommodations").

On March 8, 2016, Dumond left Dougherty a voicemail message letting him know that his ADA accommodation request had been received after CNN had created a job posting for his position, that CNN was going to "continue with the recruitment process," and that recruitment was "fairly far along in the process at this point." Voicemail from Maureen Dumond, Pl.'s Opp'n Mot. Summ. J. Ex. 13. On March 15, 2016, CNN hired Scott Pisczek, *see* March 17, 2016 CNN HR E-Mail, Pl.'s Opp'n Mot. Summ. J. Ex. 14, ECF No. 36-15, a 35-year old man, to fill Dougherty's position, *see* Pisczek Dep. 7:5; 13:16–22, Pl.'s Ex. 15, ECF No. 36-16. On March 17, 2016, Dougherty received an e-mail informing him that he was no longer an active employee of CNN and directing him to turn in his badge, Dougherty Aff. ¶ 35, effectively terminating him.[4]

---

[4] In its reply, CNN argues that Dougherty was not actually terminated in March 2016, because "CNN continued to pay for [his] cell phone – and, [he] publicly held himself out to be a photojournalist for CNN." Def.'s Reply 7 n.9. But CNN does not support this assertion with any evidence. And Pisczek noted at his deposition that he was told on his first day Dougherty "was no longer there" and that he had taken over Dougherty's gear. Pisczek Dep. 13:18–22. Taking all inferences in Dougherty's favor, as it must when examining CNN's motion for summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), the Court has

## D. Procedural History

Dougherty filed an administrative complaint with the Equal Employment Opportunity Commission on March 14, 2016. Am. Compl. ¶ 5, ECF No. 10. On March 15, 2017, he sued CNN in D.C. Superior Court. *See* Compl., Def.'s Notice of Removal Ex. 1, ECF No. 1-1. After CNN removed the case to this Court, *see* Def.'s Notice of Removal, ECF No. 1, Dougherty filed the operative amended complaint on July 7, 2017. *See* Am. Compl. In the amended complaint, Dougherty brings ten claims altogether. *See id.* ¶¶ 104–182. Dougherty's first four claims are for interference with, and retaliation for exercising, his rights under both the FMLA and DC FMLA. *See id.* ¶¶ 104–19; 167–82. Next, Dougherty brings four claims under the DCHRA, for disability and age discrimination, failure to accommodate, and retaliation. *See id.* ¶¶ 120–59. Finally, Dougherty brings claims for breach of contract and violation of the D.C. Wage Payment and Wage Collection Act. *See id.* ¶¶ 160–66. CNN filed its answer on July 13, 2017. *See* Answer, ECF No. 11. On January 15, 2019, the network moved for summary judgment. *See* Def.'s Mem. Supp. Summ. J., ECF No. 28. Dougherty filed his opposition on March 18, 2019, *see* Pl.'s Opp'n Mot. Summ. J., ECF No. 36-2, and CNN filed its reply on April 8, 2019, *see* Def.'s Reply Supp. Summ. J., ECF No. 44. On August 7, 2019, Dougherty filed a surreply. *See* Pl.'s Surreply, ECF No. 46. On August 16, 2019, CNN filed a response to the surreply. *See* Def.'s Resp. Surreply, ECF No. 47.

## III. LEGAL STANDARD

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

ample evidence to conclude for the purposes of the motion that Dougherty was terminated on March 17, 2016.

R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV. ANALYSIS

CNN has moved for summary judgment on all claims. As an initial matter, the Court dismisses Dougherty's breach of contract and wage claims because he withdrew those claims in his opposition. *See* Pl.'s Opp'n 7. Given the late stage in this litigation and Dougherty's decision to voluntarily dismiss the claims after CNN filed its motion for summary judgment, the Court dismisses the claims with prejudice pursuant to Fed. R. Civ. P. 41(a)(2). *See id.* (providing for dismissal "at the plaintiff's request only by court order, on terms that the court considers

proper"); *see also, e.g.*, *Markowicz v. Johnson*, 206 F. Supp. 3d 158, 168 (D.D.C. 2016) (dismissing claim with prejudice pursuant to Rule 41 when plaintiff withdrew it in opposition to summary judgment motion). The Court denies as moot CNN's motion for summary judgment on those two claims.

Moving on to Dougherty's remaining live claims, the Court grants CNN's motion for summary judgment in part and denies it in part. The Court first addresses Dougherty's DCHRA claim for failure to accommodate; before reviewing together his disability discrimination, age discrimination, and retaliation claims under the DCHRA; then the FMLA and DCFMLA interference claims; and finally the FMLA and DCFMLA retaliation claims. Because there is a genuine issue of material fact as to whether Dougherty could undertake the essential functions of the photojournalist position, the Court denies CNN's motion for summary judgment as to the failure to accommodate claim. And, finding that there is also a genuine dispute of material fact regarding whether CNN's asserted legitimate reason for Dougherty's termination was a pretext for discrimination or retaliation, the Court also denies summary judgment on Dougherty's remaining DCHRA claims. Next, CNN has shown that Dougherty was ineligible for both FMLA and DC FMLA leave as of January 1, 2016, and did not become eligible for either at any point until his termination. The Court accordingly grants CNN's motion for summary judgment as to his FMLA and DC FMLA interference claims. Finally, because Dougherty was ineligible under both statutes, the Court also grants CNN's motion for summary judgment on his FMLA and DC FMLA retaliation claims.

## A. The Court Denies Summary Judgment on Dougherty's Failure to Accommodate Claim

The Court first reviews CNN's motion for summary judgment on Dougherty's claim for failure to accommodate pursuant to the DCHRA. DCHRA failure to accommodate claims "are

analyzed in the same manner as an ADA [Americans with Disabilities Act] claim." *Giles v. Transit Emps. Credit Union*, 32 F. Supp. 3d 66, 70 (D.D.C. 2014).  And in order to make out a failure to accommodate claim under the ADA, a plaintiff "must demonstrate by a preponderance of the evidence: (1) that []he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of h[is] disability; (3) that with reasonable accommodation []he could perform the essential functions of h[is] job; and (4) that the employer refused to make such accommodations." *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 133–34 (D.D.C. 2013) (quoting *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 35 (D.D.C. 2011)).  CNN argues that it is entitled to summary judgment because Dougherty could not perform some of the essential functions of the photojournalist position, even with his proposed accommodations.  The Court disagrees.  It first reviews the parties' arguments regarding what the relevant essential functions of the photojournalist position are, before determining whether Dougherty was able to perform those essential functions.  Finding that CNN has not shown Dougherty was unable to perform the essential functions of his position, the Court denies the network's motion for summary judgment.[5]

### 1.  There Remains a Genuine Issue of Material Fact Regarding Whether Climbing Is an Essential Function of the Photojournalist Position

First, the Court addresses the parties' arguments regarding what are the essential functions of the photojournalist position.  In its motion, CNN argues that essential functions a photojournalist must be able to perform include walking, running, carrying equipment, and

---

[5] CNN also argues that it is entitled to summary judgment because it "engage[d] in the interactive process to try to accommodate [Dougherty]," but "there was simply no accommodation which would have enabled [him] to perform the essential functions of his position." Def.'s Mem. Supp. 23.  This rationale for summary judgment also fails when, as discussed above, CNN has not shown that Dougherty was unable to perform the essential functions of his position.

climbing. Def.'s Mem. Supp. 17. In his opposition, Dougherty appears to concede that carrying equipment is an essential function of the position. *See* Pl.'s Opp'n 28 ("The job description does require one to lift a minimum of 35 pounds."). But he argues that CNN has otherwise "mischaracterized [the] essential functions and . . . made them from whole cloth." *Id.* After briefly discussing what constitutes an essential function, the Court reviews the parties' arguments regarding what functions are essential. Finding that the evidence in the record does not indicate that Dougherty was unable to walk or run when he made his request for an accommodation, the Court declines to address whether walking or running are essential functions. However, the Court agrees with Dougherty that CNN has not established climbing to be an essential function of the photojournalist position.

An individual qualifies for protection under the ADA when he, "with or without accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 1211(8). The statute provides that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.* Implementing regulations for the ADA provide further guidance both as to what might qualify as an essential function and as to what type of evidence can help establish what those essential functions are. *See* 29 C.F.R. § 1630.2(n). "The term essential function means the fundamental duties of the employment position . . . . The term . . . does not include the marginal functions of the position." *Id.* § 1630.2(n)(1). Among others, evidence of whether a job function is essential includes "[t]he employer's judgment," "[w]ritten job descriptions prepared before . . . interviewing applicants for the job," "[t]he amount of time spent on the job performing the function," and "[t]he

consequences of not requiring the incumbent to perform the function." *Id.* § 1630.2(n)(3); *see also Hunt v. District of Columbia*, 66 A.3d 987, 990 (D.C. 2013) (citing to 29 C.F.R. § 1630.2(n)(3) when evaluating essential functions of position in DCHRA claim). "[T]he determination of whether physical qualifications are essential functions of a job requires the court to engage in a highly *fact-specific* inquiry," *Hall v. U.S. Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988) (quoting *Arline v. Sch. Bd. of Nassau Cty.*, 772 F.2d 759, 764–65 (11th Cir. 1985)), and "courts generally view a dispute over the definition of a job's essential functions as a question of fact that should be resolved by a jury," *Baker v. Potter*, 294 F. Supp. 2d 33, 44 (D.D.C. 2003) (citing cases).

As an initial matter, it is unclear to the Court that determining whether walking or running are essential functions of the photojournalist position is relevant to its analysis, given that the facts currently in the record do not suggest Dougherty was unable to perform those functions. CNN contends that the functions are essential, *see* Def.'s SMF ¶ 12, because the photojournalist position at CNN has a focus on gathering video for news specifically, with no set schedule and with photojournalists being always expected to "jump into action" when breaking news occurs, Schantz Dep. 56:19–20, Def.'s Ex. C; *see also id.* at 56:13–16, Def.'s Ex. C (noting that the position is "most often correlated to a fireman who [sic] you sit in the fire department all day until the bell rings and then you have to run"); Dougherty Dep. 85:17–86:2, Def.'s Ex. B. (noting that Dougherty would do "whatever it takes" to gather news). Dougherty admits that he had to walk long distance while working as a photojournalist, *see* Dougherty Dep. 92:19–20, Def.'s Ex. B (answering the question "[d]id you have to walk long distances?" with "I think . . . that's obvious"); *see also* 29 C.F.R. § 1630.2(n)(3)(iii) (mentioning "[t]he amount of time spent on the job performing the function" as evidence of whether a function is essential), and that he

sometimes had to run in order to catch breaking news, Dougherty Dep. 90:9–11, 92:9–13, Def.'s Ex. B (admitting that Dougherty probably had to run after stories on occasion). But he argues that running and walking are "at best a marginal function of his employment." Pl.'s Opp'n 30.[6]

Ultimately, though, there is no evidence in the record to suggest that Dougherty was unable to walk or run at the time he made his request for an accommodation. Dougherty was determined to be totally incapacitated by Rudzki on January 5, 2016, at which time he presumably could not run or walk. *See* Dougherty Aff. ¶ 16. However, Rudzki then cleared Dougherty for light duty on February 22, 2016. *See* Feb. 22, 2016 Prescription. And while Rudzki indicated that Dougherty was restricted from "running or walking with camera *while shooting*," *id.* (emphasis added), there is no indication in the record whatsoever that Dougherty was restricted from, or in fact unable to, walk or run as of February 22, 2016.[7] Even assuming, *arguendo*, that the functions were essential, CNN has failed to show that Dougherty was unable

---

[6] The Court notes that Dougherty mischaracterizes the record on several occasions while arguing that the photojournalist position does not require the ability to walk or run. According to Dougherty, Kinney admitted at his deposition that a wheelchair-bound photojournalist could be employed in thousands of positions at CNN, which shows walking and running cannot be essential functions of the position. Pl.'s Opp'n 29. But as CNN points out in its reply, the context of the deposition makes clear that Kinney was answering a hypothetical question by Dougherty's counsel about what assignment a wheelchair-bound photojournalist could be assigned to, *if that photojournalist had been hired*. *See* Def.'s Reply 14–15; Kinney Dep. 40:21–41:2, Pl.'s Ex. 6 ("If I've hired this person to work as a photojournalist, they can be assigned to anything that any of the other 84 photojournalists could also be assigned to."). Similarly, Dougherty argues in his opposition that the photojournalists he deposed were out-of-shape and essentially unable to run. *See* Pl.'s Opp'n 2 n.4. Setting aside the unnecessarily impolite manner in which he describes those photojournalists' abilities, Dougherty does not present any evidence to substantiate that argument.

[7] Admittedly, the instructions in the prescription are somewhat vague. The request that Dougherty "avoid running or walking with camera while shooting," Feb. 22, 2016 Prescription, could be interpreted to mean that Dougherty should avoid both 1) running and 2) walking with a camera while shooting, or that Dougherty should avoid both 1) running with a camera while shooting and 2) walking with a camera while shooting. But CNN does not attempt to clarify the request, and the Court must take all inferences in Dougherty's favor at the summary judgment stage.

to perform them. The Court accordingly need not determine whether running or walking were essential functions of the photojournalist position, and will not do so.

On the other hand, Dougherty's light-duty prescription indicated that he should avoid going down stairs, *see* Feb. 22, 2016 Prescription, and the Court must therefore address whether climbing is an essential function of the photojournalist position. CNN contends that the function is essential, a judgment to which the Court should give deference. *See* Def.'s SMF ¶ 12; 29 C.F.R. § 1630.2(n)(3)(i). CNN's argument is that, just like with walking and running, a photojournalist may be required to climb structures in order to gather news, which renders the function crucial in a photojournalist's mission to gather news at all cost. *See* Def.'s Mem. Supp. 16. But the network provides very little additional evidence on the issue. CNN's job description for the photojournalist position does not explicitly list climbing as one of the functions of the position. *See* Pl.'s Opp'n 28; CNN Photojournalist Job Posting Description. In fact, the ability to "lift at least 35 pounds" is the only requirement in the job description that relates to physical ability. *See* CNN Photojournalist Job Posting Description. The job description otherwise provides a detailed summary of abilities CNN expects from its photojournalists, with a heavy focus on technical skills in shooting and editing. *See id.* And the implementing regulations for the ADA make clear that "[w]ritten job descriptions prepared before advertising or interviewing applicants for the job" are a form of evidence of whether a particular function is essential. 29 C.F.R. § 1630.2(n)(3)(ii). A job posting description that is devoid of any physical ability requirement "calls into doubt [CNN's] definition of the essential functions of . . . [the] position." *Acevedo v. City of Philadelphia*, 680 F. Supp. 2d 716, 734 (E.D. Pa. 2010) (denying summary judgment when functions deemed essential by defendant were not included in written description of position); *see also Baker*, 294 F. Supp. 2d at 44 (denying summary judgment to employer

when description of position did not include employer's asserted essential functions); *Ward v. Wal-Mart Stores, Inc.*, 140 F. Supp. 2d 1220, 1227–28 (D.N.M. 2001) (denying summary judgment to employer when "Matrix of Essential Job Functions" that had been provided to employee at interview did not include job function employer claimed to be essential during litigation).

In addition, unlike with walking and running, which might be needed whenever a breaking news story requires photojournalists to speedily move locations, the ability to climb structures is entirely location-dependent. And the only references to climbing in the record come from Dougherty's admission at his deposition that he "probably" had to climb a structure to gather news in his career, Dougherty Dep. 86:8–12, Def.'s Ex. B, and Courtney's testimony that photojournalists may have to climb stairs at the White House and Russell Rotunda locations, Courtney Dep. 96:18–97:6, Def.'s Ex. D. Absent anything more, CNN has not shown that climbing is unlike other demanding physical activity Courtney indicated photojournalists may have to undertake in some circumstances to gather news, such as "crawling, . . . standing in standing water, in a hurricane, [and] navigating debris fields." *Id.* at 51:1–3, Def.'s Ex. D. Just because a photojournalist may have to engage in such an activity on occasion does not make it essential to the position—the Court certainly doubts that CNN considers the ability to navigate debris fields to be an essential function of a photojournalist. *See, e.g.*, *Williams v. ABM Parking Servs. Inc.*, 296 F. Supp. 3d 779, 785–86 (E.D. Va. 2017) (finding that genuine issue of material fact existed as to whether driving shuttle bus was essential function of position when evidence indicated employees performing the position rarely drove shuttle buses). Essential functions "do[] not include the marginal functions of the position," 29 C.F.R. § 1630.2(n)(1), and here

CNN has not provided evidence to suggest that climbing occurs more than marginally in the course of performing the position of photojournalist.

### 2. CNN Has Not Shown That Dougherty Cannot Perform the Essential Functions of the Photojournalist Position

Next, the Court reviews whether Dougherty can perform the essential functions of the photojournalist position. CNN contends that Dougherty was unable to perform the essential functions of the position because he was unable to run, walk, go up or down stairs, and carry equipment. *See* Def.'s Mem. Supp. 18–22. On the record before it, the Court cannot agree. As an initial matter, CNN has only conclusively established that carrying equipment is an essential function of the photojournalist position, and the network has provided no evidence that Dougherty was unable to carry equipment when he made his request for an accommodation. In addition, even reading CNN's motion liberally, the network still fails its burden to show that Dougherty could not perform the essential functions of his position. The Court therefore denies CNN's motion for summary judgment.

First, CNN has not shown that Dougherty was unable to carry equipment. In its motion, CNN equates the restriction that Dougherty "avoid . . . carrying equipment downstairs," Feb. 22, 2016 Prescription, with a complete restriction on carrying equipment, *see* Def.'s Mem. Supp. 20–22. CNN does not indicate why it does so when the prescription clearly appears to restrict only Dougherty's ability to carry equipment in a particular situation (going down stairs), or provide any other evidence to indicate that Dougherty was otherwise unable to carry equipment. The network has therefore failed its burden to show that Dougherty could not perform the only essential function of the photojournalist position it has conclusively established. This alone warrants denial of summary judgment on Dougherty's failure to accommodate claim.

19

Second, even if the Court were to assume, *arguendo*, that CNN had shown walking and running to be essential functions, it would still find that the network has failed to show that Dougherty was unable to perform the essential functions of the photojournalist position.  As discussed above, Rudzki's prescription indicated that Dougherty should "avoid running or walking with camera while shooting," rather than avoiding running or walking altogether.  Feb. 22, 2016 Prescription.  Perplexingly, while CNN devotes a significant portion of its motion to explaining why running and walking are essential functions of the photojournalist position, it never explains why walking *while shooting* and running *while shooting* are also essential functions.  *See* Pl.'s Opp'n 28.  On its face, Dougherty's February 22, 2016 light duty prescription does not appear to restrict his ability to walk or run, and CNN has not otherwise established that Dougherty was unable to perform those functions.

Finally, while the record is devoid of evidence that running while shooting is a function photojournalists sometimes have to engage in—let alone that it is an essential function—it does contain at least some evidence that, in reporting on news stories, photojournalists sometimes have to walk while shooting.  *See, e.g.*, Def.'s Mem. Supp. 11 (citing @MSNBC, Twitter (June 15, 2018), https://mobile.twitter.com/MSNBC/status/ 1007603418171629570) (pointing to video showing cameramen walking while shooting video of President Donald Trump at the White House).  But even were the Court to assume further that walking while shooting was an essential function of the photojournalist position—which CNN has not shown—CNN appears to acknowledge in its motion that the use of an EasyRig camera system would allow Dougherty to perform that function, opposing the accommodation solely on the ground that Dougherty would not be able to run while filming with it.  *See* Def.'s SMF ¶ 45 (noting that the EasyRig was not a reasonable accommodation because "the camera would hit [Dougherty] in the face if he

attempted to run while using the EasyRig"); Schantz Aff. ¶ 15, Def.'s Mot. Summ. J. Ex. A, ECF No. 28-1 ("It is not possible to run while using an EasyRig because it would hit Plaintiff in the face as he was running."); *see also* Jenkins Dep. 87:2, 87:11–12 ("I wouldn't run with [the EasyRig] to use it. But if I had to run, I could run . . . . I wouldn't run with the idea that I'm sending back any kind of shot.").

## B. The Court Denies Summary Judgment on Dougherty's Disability Discrimination, Retaliation, and Age Discrimination Claims Under the DCHRA

The Court moves on to Dougherty's remaining claims under the DCHRA, for disability discrimination, retaliation, and age discrimination. Because all three claims are evaluated under the *McDonnell Douglas* framework, and because CNN asserts the same legitimate, non-discriminatory reason for Dougherty's termination as to each claim, the Court addresses them together in this section. The Court addresses each claim in turn. And, finding that there remains a genuine issue of material fact regarding whether CNN's asserted legitimate, non-discriminatory reason was pretextual, the Court denies the motion for summary judgment on all three claims.

### 1. CNN Is Not Entitled to Summary Judgment on Dougherty's Disability Discrimination Claim

The Court first addresses Dougherty's claim of disability discrimination under the DCHRA. As with failure to accommodate claims, DCHRA disability discrimination claims are analyzed under the same framework as the ADA. *See, e.g.*, *DuBerry v. District of Columbia*, 582 F. Supp. 2d 27, 40 (D.D.C. 2008). Dougherty contends that CNN discriminated against him on the basis of his disability by terminating him in March 2016. Pl.'s Opp'n 27. CNN argues that it is entitled to summary judgment because Dougherty does not qualify as disabled under the ADA, and because it has provided a legitimate, non-discriminatory reason for his termination. Def.'s Mem. Supp. 24. The Court is unconvinced.

Under the ADA, where there is no direct evidence of discrimination, disability discrimination claims follow the familiar *McDonnell-Douglas* burden-shifting framework. First, a plaintiff must establish his prima facie case of discrimination by showing 1) that he had a disability within the meaning of the ADA, 2) that he was qualified for the position, with or without an accommodation, and 3) that he suffered an adverse action because of his disability. *Walden v. Patient-Centered Outcomes Research Inst.*, 304 F. Supp. 3d 123, 132–33 (D.D.C. 2018) (citing *Swanks v. WMATA*, 179 F.3d 929, 934 (D.C. Cir. 1999)). If the plaintiff can make out his prima facie case, the burden then shifts to the employer to "articulate some 'legitimate, nondiscriminatory reason' for the action challenged." *Id.* (quoting *Giles*, 794 F.3d at 6). When an employer makes such a showing, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Instead, "the question on summary judgment becomes whether, based on the totality of the parties' evidence, a reasonable jury could determine that the defendant's proffered explanation was pretext for discrimination." *Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 143 (D.D.C. 2016) (citing *Brady*, 520 F.3d at 494–95).

Here, CNN argues that Dougherty has failed to make out his prima facie case because he is unable to perform the essential functions of the photojournalist position, which means he is not qualified for the position. *See* Def.'s Mem. Supp. 26. For the reasons described above in Part IV.A., the Court rejects that argument because CNN has not shown that Dougherty was unable to perform the essential functions of a photojournalist. But CNN also argues that it had a legitimate, non-discriminatory reason for terminating Dougherty: Dougherty "was unable to return to work and CNN's business and operational needs necessitated filling the vacant position." Def.'s Mem. Supp. 27. According to CNN, because "the 2016 presidential election

was unprecedented and called for an 'all hands on deck' approach," requiring photojournalists to "travel[] often and work[] an unparalleled number of overtime hours," the network could not afford to keep Dougherty's position unfilled as he recovered from his injury. *Id.* The Court must therefore assess whether, based on the record before it, "a reasonable jury could determine that [CNN's] preferred explanation was pretext for discrimination." *Conn*, 149 F. Supp. 3d at 143.

As an initial matter, the obvious problem with CNN's asserted legitimate, non-discriminatory reason for terminating Dougherty is that he had in fact been cleared to return to work on light duty by his doctor. *See* Feb. 22, 2016 Prescription. And because CNN has not shown that the restrictions Rudzki imposed prevented Dougherty from performing the essential functions of his position, a reasonable juror could conclude that Dougherty could have performed photojournalist assignments and thereby obviated any need for CNN to fill his position. But Dougherty also provides evidence that further suggests CNN's asserted legitimate, non-discriminatory reason may be pretextual. Dougherty asserts that, both after his 2015 and during his 2016 leave, several CNN employees told him he could not return to work unless he was 100% fit for duty. Dougherty Aff. ¶¶ 11, 23, 24. He also claims that Dumond, his HR manager, derided his request for an accommodation under the ADA. *Id.* ¶ 27. A reasonable jury could infer from these comments that Dougherty's disability, and his inability to perform fully as a result, were the real motivation behind CNN's decision to terminate him. CNN argues that "[u]ncorroborated allegations are not sufficient to create a material factual dispute and should thus be rejected." Def.'s Reply 2 (citing *Slate v. Am. Broad. Cos., Inc.*, 941 F. Supp. 2d 27, 39–40 (D.D.C. 2013)). But "the D.C. Circuit has also emphasized that 'there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of

discrimination that could withstand a summary judgment motion.'" *Norris v. WMATA*, 342 F. Supp. 3d 97, 117 (D.D.C. 2018) (quoting *Desmond v. Mukasey*, 530 F.3d 944, 964 (D.C. Cir. 2008)). Rather than making "subjective, conclusory statements regarding circumstances over which []he lacks personal knowledge," *id.*, Dougherty here is making specific allegations regarding statements made to him by CNN employees.

And in any event, the allegations Dougherty makes in his affidavit are not entirely uncorroborated. The testimony of one CNN witness who was involved in reviewing Dougherty's requested accommodations, Paul Miller, could be read to suggest hostility to accommodating his disability, or to accommodating photojournalists with a disability altogether. *See* Miller Dep. 43:13–44:8, Pl.'s Opp'n Mot. Summ. J. Ex. 22, ECF No. 36-23 (explaining that Miller wrote in an e-mail "[l]ight duty never worked for [Dougherty] in the past," because "[it] did not work for his department for him to return on light duty"); *id.* at 45:1–8, Pl.'s Ex. 22 (changing course and noting that the statement instead "was likely a general statement about photojournalists"); *id.* at 67:10–68:19, Pl.'s Ex. 22 (noting that Miller did not believe Rudzki's requested accommodations were legitimate because he had never seen a doctor make a request for specific camera equipment to be provided as an accommodation in the past). On March 8, 2016, Dumond also left a voicemail with Dougherty letting him know that he had made his accommodation request too late and that CNN would be moving on with the hiring process for his replacement, which was "fairly far along in the process at this point." Voicemail from Maureen Dumond. While CNN is correct that the voicemail can be interpreted as simply relaying that CNN was moving forward with filling Dougherty's position, *see* Def.'s Reply 20, it can also be interpreted as consistent with the statements Dougherty claims Dumond made to him regarding his disability and as further indicating CNN's disregard of it. Finally, as Dougherty

points out, although CNN HR indicated as part of the "business justification" for terminating him that the network faced an unprecedented amount for work for its photojournalists and "plan[ned] to up-staff with temporary photojournalists in order to alleviate the strain of political coverage," Feb. 10, 2016 CNN HR E-Mail, it never did so, *see* CNN Resps. to Pl.'s Am. Third Set of Interrogs. 7, Pl.'s Mot. Summ. J. Ex. 30, ECF No. 36-31. This casts at least some doubt on the extent of the pressing business need for filling Dougherty's position, in particular given that, by the time Pisczek came on board, Dougherty had already been cleared to return on light duty.[8]

Because CNN has not shown that Dougherty was unable to return to work and take on assignments as a photojournalist, and because Dougherty provides additional evidence that further challenges the network's asserted legitimate, non-discriminatory reason for terminating him, the Court finds that CNN has not met its burden to show that it is entitled to summary judgment. The Court denies the motion as to the disability discrimination claim.

### 2. CNN Is Not Entitled to Summary Judgment on Dougherty's Retaliation Claim

Next, the Court reviews CNN's motion for summary judgment on Dougherty's claim for retaliation under the DCHRA. As with Dougherty's disability discrimination claim, the DCHRA retaliation claim is evaluated under the same standard as retaliation claims under federal law, with courts applying the *McDonnell Douglas* framework when there is no direct evidence of retaliation. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010) (citing *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 235–36 n.3 (D.C. Cir. 1999)) (noting that DCHRA

---

[8] In another one of its responses to Dougherty's interrogatories, CNN noted that its pressing business need was created by "the unprecedented number of candidates and the constant coverage of the Presidential election season that began in late 2015." Def.'s Resp. Pl.'s Fifth Interrog. 3, Def.'s Reply Ex. G, ECF No. 44-7. Yet CNN had no issue with Dougherty remaining on leave between March 2015 and at least November 2015, which also undercuts its stated business rationale for his termination.

claims are evaluated under the *McDonnell Douglas* framework). CNN argues that to the extent Dougherty engaged in any protected activity, he both has failed to establish his prima facie case and cannot show that the network's asserted legitimate, non-retaliatory reason for his termination was a pretext for retaliation. *See* Def.'s Mem. Supp. 31–32. For much of the same reasons as with Dougherty's disability discrimination claim, the Court disagrees.

To make a prima facie case of retaliation under the DCHRA, a plaintiff "must show: (1) that []he engaged in protected activity; (2) that []he was subjected to adverse action by the employer; and (3) that there existed a causal link between the adverse action and the protected activity." *Walden v. Patient-Centered Outcomes Research Inst.*, 177 F. Supp. 3d 336, 343 (D.D.C. 2016) (quoting *Powell v. Am. Red Cross*, 518 F. Supp. 2d 24, 36 (D.D.C. 2007)). Once the plaintiff makes his prima facie case, the burden shifts to the defendant to provide a legitimate, non-retaliatory reason for the adverse action, and when, as here, the defendant has done so, the Court must "look to whether a reasonable jury could infer retaliation from all the evidence, which includes not only the prima facie case but also the evidence the plaintiff offers to attack the employer's preferred explanation." *Gaujacq*, 601 F.3d at 577 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)).

CNN first argues that Dougherty's claim fails as a matter of law because he cannot show that the decision to terminate him was causally connected to any protected activity. *See* Def.'s Mem. Supp. 30. The Court disagrees. According to CNN, "there can be no causal connection between [Dougherty's] request for leave and the backfilling of his position because the decision was made for one reason: the pressing business needs of CNN." *Id.* at 31. But the problem with this argument is that it confuses the causal link requirement of a plaintiff's prima facie case with the plaintiff's burden to counter any asserted legitimate, non-retaliatory reason for an adverse

action. That CNN has asserted a legitimate, non-retaliatory explanation for terminating

Dougherty does not necessarily defeat any causal link between his protected activity and his

termination; it merely requires Dougherty to provide sufficient evidence challenging that

explanation for the Court to find that "a reasonable jury could infer retaliation," *Gaujacq*, 601

F.3d at 577 (quoting *Jones*, 557 F.3d at 677).

Before addressing that asserted legitimate, non-retaliatory explanation, the Court notes

that Dougherty *has* provided sufficient evidence to infer causation at the prima facie stage. It is

well-established that "[r]equests for accommodation are 'protected activities' within the meaning

of the ADA." *Ellis v. Georgetown Univ. Hosp.*, 631 F. Supp. 2d 71, 77 (D.D.C. 2009) (quoting

*DuBerry*, 582 F. Supp. 2d at 37). And temporal proximity between a protected activity and

adverse action can be sufficient for a plaintiff to establish causality when making a prima facie

case of retaliation. *See, e.g.*, *Carney v. American Univ.*, 151 F.3d 1090, 1095 (D.C. Cir. 1998)

("The causal connection component of the prima facie case may be established by showing that

the employer had knowledge of the employee's protected activity, and that the adverse personnel

action took place shortly after that activity." (quoting *Mitchell v. Baldridge*, 759 F.2d 80, 86)

(D.C. Cir. 1985)). Here, Dougherty was terminated less than a month after making his request

for accommodation. *See* Dougherty Aff. ¶ 29 (noting that accommodation request was made on

February 19, 2016); Dougherty Aff. ¶ 35 (noting that Dougherty was terminated on March 17,

2016). Courts have routinely found such close temporal proximity to warrant an inference of

causality at the prima facie stage. *See, e.g.*, *McNair v. District of Columbia*, 213 F. Supp. 3d 81,

90 (D.D.C. 2016) (finding plausible inference of causation when protected activity occurred

within a month of adverse action); *Stone-Clark v. Blackhawk, Inc.*, 460 F. Supp. 2d 91, 98

(D.D.C. 2006) (same); *see also Kilby-Robb v. Devos*, 247 F. Supp. 3d 115, 129 (D.D.C. 2017)

(pointing out that "to rely on temporal proximity to prove causal relation, the temporal proximity must be 'very close'—generally less than three months" (quoting *Lane v. Vasquez*, 961 F. Supp. 2d 55, 67–68 (D.D.C. 2013))).

Second, the Court has already discussed the problems with CNN's asserted, legitimate, non-retaliatory reason for terminating Dougherty above in Part IV.B.1. Because CNN has not shown that Dougherty was unable to return to his position on light duty, and thus that he could not have contributed to the "unprecedented number of assignments and overtime hours required of photojournalists," Def.'s Mem. Supp. 31, there is some doubt about the validity of the network's asserted legitimate reason for terminating him. Furthermore, the same comments by CNN employees that suggest a hostility to Dougherty's disability could be interpreted to suggest that Dougherty was terminated for trying to exercise his rights by requesting an accommodation. *See, e.g.*, Dougherty Aff. ¶ 27 (noting that Dumond called Dougherty and was dismissive of his accommodation request, stating "you made it before you went to the doctor!"); Voicemail from Maureen Dumond (noting that CNN would continue with its recruitment process because Dougherty made his accommodation request too late). And it is not entirely clear to the Court that CNN's pressing business needs justified Dougherty's immediate replacement. *See, e.g.*, Def.'s Resp. Pl.'s Fifth Interrog. 3, Def.'s Reply Ex. G, ECF No. 44-7 (noting that the pressing business need created by election season started in late 2015, presumably when Dougherty was still on leave for his March 2015 surgery). Finding that there remains a genuine issue of material fact as to whether CNN's asserted legitimate, non-retaliatory reason for Dougherty's termination was pretextual, the Court denies the motion for summary judgment as to the DCHRA retaliation claim.

*3. CNN Is Not Entitled to Summary Judgment on Dougherty's Age Discrimination Claim*

Finally, the Court addresses Dougherty's remaining DCHRA claim, that he was terminated because of his age. "The Courts of the District of Columbia 'look to federal court decisions interpreting the [Age Discrimination in Employment Act ("ADEA")] when evaluating age discrimination claims under the DCHRA,'" *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370, 376 (D.C. Cir. 2016) (quoting *Wash. Convention Ctr. Auth. v. Johnson*, 953 A.2d 1064, 1073 n.7 (D.C. 2008)), which apply the *McDonnell Douglas* framework when direct evidence of discrimination is not available, *see, e.g.*, *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 4, 10 (D.D.C. 2008). As with Dougherty's retaliation and disability discrimination claims, CNN again argues that Dougherty both fails to meet his prima facie case and that it has provided a legitimate, non-discriminatory reason for his termination. And as with both those claims, the Court finds neither argument persuasive and accordingly denies the motion for summary judgment.

To make a prima facie case of discriminatory termination on the basis of age, a plaintiff must "show[] that he (1) belongs to the statutorily protected age group . . . , (2) was qualified for the position, (3) was [terminated], and (4) was disadvantaged in favor of a younger person." *Miller v. Gray*, 52 F. Supp. 3d 62, 67 (D.D.C. 2014) (quoting *Cuddy v. Carmen*, 694 F.2d 853, 857 (D.C. Cir. 1982)). Once a plaintiff establishes his prima facie case, and if the defendant provides a legitimate, non-discriminatory reason for the termination, the Court must then resolve the "central question . . . [of whether] the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason." *Brady*, 520 F.3d at 494.

Here, CNN again appears to confuse the requirements for a plaintiff to make out their prima facie case and for a plaintiff to defeat an asserted legitimate, non-discriminatory reason, arguing circularly that Dougherty cannot establish his prima facie case because of CNN's asserted legitimate business needs warranting his termination. *See* Def.'s Mem. Supp. 34. In any event, CNN having asserted a legitimate, non-discriminatory reason for Dougherty's termination, *see id.* at 34–35, the Court must determine whether a reasonable jury could find CNN's asserted reason to be pretextual, *see Brady*, 520 F.3d at 494. It finds that sufficient evidence indicative of pretext has been presented to defeat CNN's motion. First, as described above in Parts IV.B.1 and IV.B.2., CNN has not established that Dougherty could not perform the essential functions of his position when it terminated him, and its justification that business needs necessitated the quick backfilling of his position therefore falls short at the summary judgment stage. Additionally, Dougherty points to some extraneous evidence that could be interpreted to further suggest that he was discriminated against on the basis of age. Dougherty notes that he was more educated than Pisczek and had won several awards for his work, while Pisczek had not. *See* Pl.'s Opp'n 53; Resume of Martin Dougherty, Pl.'s Opp'n Mot. Summ. J. Ex. 51, ECF No. 36-52; Resume of Scott Pisczek, Pl.'s Opp'n Mot. Summ. J. Ex. 52, ECF No. 36-54. To be sure, it is unclear just how persuasive this argument is when other evidence suggests CNN may have made the decision to terminate Dougherty's position prior to Pisczek applying. *See, e.g.*, Feb. 4, 2016 CNN HR E-mail. But Dougherty is not required to conclusively establish pretext at this stage—he has shown that CNN had a possible pretext for his termination, and at trial will have to demonstrate that age was the real reason for the

termination in order to prevail on his claim. The Court accordingly denies CNN's motion for summary judgment as to the age discrimination claim.[9]

### C. CNN Is Entitled to Summary Judgment on Dougherty's FMLA and DC FMLA Interference Claims Because He Was Ineligible Under Either Statute

The Court next reviews Dougherty's interference claims under the FMLA and DC FMLA. Courts in this circuit "regularly analyze both the FMLA and the DCFMLA under the same legal framework," *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 98 (D.D.C. 2016) (citations omitted), and the Court accordingly addresses the claims together. Dougherty brings claims for interference with rights protected by the FMLA and DCFMLA for denying his request for protected leave starting on January 1, 2016, and subsequently terminating him on March 17, 2016.

The FMLA and DC FMLA guarantee eligible employees a certain amount of protected leave from work in certain specific circumstances, including for serious medical conditions. An employee is eligible under the FMLA if he has been employed by his employer for at least 12 months, and has worked at least 1,250 hours with that employer in the previous 12 months. *See* 29 U.S.C. § 2611(2)(A). The FMLA entitles such an eligible employee to take 12 weeks of leave during any 12-month period for, inter alia, "a serious health condition that makes the employee unable to perform the functions of the position of such an employee." *Id.* § 2612(a)(1)(D). The DC FMLA is structured similarly, providing eligibility to any employee who has been employed by the same employer for more than a year and has worked at least 1,000

---

[9] In its reply, CNN argues that Pisczek was actually more qualified than Dougherty, and that Dougherty's claim to the contrary is "yet another example of misconstruing the record." Def.'s Reply 24 n.23. CNN cites to deposition testimony of Schantz, but does not include the relevant portions of the transcript of Schantz's testimony in its reply. Without evidence to support CNN's argument, the Court does not credit it.

hours for that employer in the previous 12 months.  D.C. Code § 32-501(1).  Under the DC

FMLA, eligible employees are entitled to take 16 weeks of leave every 24 months for a serious

medical condition.  *Id.* § 32-503(a).  District regulations provide that leave qualifying under both

the DC FMLA and the federal FMLA is to be counted concurrently under both laws.  D.C. Mun.

Reg. tit. 4, § 1620.2.

To make out a claim of interference with rights protected by the FMLA (and DC FMLA),

a plaintiff must show that "(1) []he was eligible for the FMLA's protections; (2) h[is] employer

was covered by the FMLA; (3) []he was entitled to take leave under the FMLA; (4) []he

provided sufficient notice of h[is] intent to take leave; and (5) h[is] employer denied h[im]

FMLA benefits to which []he was entitled."  *Elzeneiny v. District of Columbia*, 195 F. Supp. 3d

207, 217 (D.D.C. 2016) (quoting *Pagel v. TIN, Inc.*, 695 F.3d 622, 627 (7th Cir. 2012)).  CNN

argues that because Dougherty used all of his FMLA and DC FMLA leave by taking sixteen

weeks of leave after his March 2015 surgery, he had exhausted his available leave under both

statutes at the time he made his request for FMLA leave starting on January 1, 2016.  *See* Def.'s

Mem. Supp. 9.  And in its reply, CNN further contends that Dougherty was ineligible for FMLA

leave altogether as of March 2016, having not worked the required minimum number of hours

between March 2015 and March 2016.  *See* Def.'s Reply 4 n.7 (citing Suppl. Ul-Haque Aff. ¶ 5,

Def.'s Reply Ex. B, ECF No. 44-2).  As a result, CNN contends that Dougherty's claims fail as a

matter of law.  *See* Def.'s Mem. Supp. 9.[10]

---

[10] CNN also argues that Dougherty was not prejudiced by any denial of FMLA leave
because he is still unable to work, and therefore that his interference claim fails.  Def.'s Mem.
Supp. 10; *see Lovey-Coley v. District of Columbia*, 255 F. Supp. 3d 1, 11 (D.D.C. 2017) (noting
that prejudice is a necessary element of FMLA interference claims).  But the deposition
testimony CNN points to for that proposition does not bear it out.  At his deposition, Dougherty
acknowledged that he had not received any note from a doctor indicating that he was cleared to
return to full duty.  Dougherty Dep. 270:5–15, Def.'s Ex. B.  But Dougherty is not currently

Although Dougherty's opposition is not a model of clarity, he appears to argue in response 1) that CNN improperly designated his March 2015 leave as FMLA leave when he declined to take FMLA leave, 2) that CNN improperly retroactively designated the March 2015 leave as DC FMLA leave, 3) that CNN failed to explain how it calculated his FMLA and DC FMLA leave period, and finally 4) that he would at a minimum have been able to take FMLA leave again on March 4, 2016, which CNN improperly denied. Pl.'s Opp'n 22–27. In his surreply, Dougherty further asserts that he did work the required number of hours to be eligible for FMLA leave as of March 2016, pointing to an earnings record covering the time period between January 2015 and March 2016. *See* Martin Dougherty Employee Earnings Record, Pl.'s Surreply Ex. A.

The Court ultimately agrees with CNN that summary judgment is warranted on both of Dougherty's interference claims, for a simple reason: the documents produced by the parties in the reply and surreply establish that Dougherty was ineligible for either FMLA or DC FMLA leave as of January 1, 2016—and because Dougherty did not work any hours between January 1, 2016 and March 17, 2016, that he remained ineligible until his termination. After reviewing Dougherty's eligibility under the statutes, the Court briefly goes over Dougherty's arguments as to the designation of his March 2015 leave as FMLA leave and the retroactive designation of that leave as DC FMLA leave, because those arguments arguably point to interference with Dougherty's exercise of his rights as to the March 2015 leave rather than the January 2016 request for leave. Finding those arguments meritless as well, the Court grants summary judgment to CNN on Dougherty's FMLA and DC FMLA claims.

---

employed by CNN, so it is unclear what "full duty" such a hypothetical note would allow him to return to. And Dougherty *was* cleared to return to light duty in March 2016; by terminating him while he was on leave, CNN therefore caused him a clear prejudice.

*1. Dougherty Was Ineligible for FMLA Leave and DC FMLA Leave on January 4, 2016*

The Court first reviews the parties' arguments regarding Dougherty's eligibility for FMLA and DC FMLA Leave.  In his opposition, Dougherty argues that, to the extent he was not entitled to FMLA leave as of January 1, 2016, he was at a minimum entitled to such leave in March 2016.  *See* Pl.'s Opp'n 26.  In response, CNN argues in its reply that Dougherty was ineligible for FMLA leave as of March 2016 because he did not work enough hours with CNN between March 8, 2015 and March 8, 2016 to qualify as an eligible employee.  *See* Def.'s Reply 4 n.7; Supp. Ul-Haque Aff. ¶ 5.  And in his surreply, Dougherty points to employment records showing that he continued to be paid while he was on leave in 2015, suggesting that he worked the required number of hours to be eligible.  *See* Martin Dougherty Employee Earnings Record.  Based on the parties' arguments and the evidence presented, the Court can only conclude that Dougherty was ineligible for FMLA and DC FMLA leave not just as of March 2016, but as of January 1, 2016 as well.  Dougherty's claims of interference with rights protected under the FMLA and DC FMLA in connection with his request for leave on January 1, 2016 therefore fail as a matter of law.

As discussed above, in order to be eligible under the FMLA an employee must 1) "[h]a[ve] been employed by the employer for at least 12 months," 29 C.F.R. § 825.110(a)(1), and 2) "ha[ve] been employed for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave."  *Briscoe v. Costco Wholesale Corp.*, 61 F. Supp. 3d 78, 90–91 (D.D.C. 2014) (citing 29 C.F.R. § 825.110(a)(2)).  "The determination of whether an employee meets the hours of service requirement is made at the date the FMLA leave is to start."  *Id.* (citing 29 C.F.R. § 825.110(d)).  And the implementing regulations for the FMLA provide that "whether an employee has worked the minimum 1,250 hours of service is

determined according to the principles established under the Fair Labor Standards Act (FLSA) for determining compensable hours of work," 29 C.F.R. § 825.110(c)(1) (citing 29 C.F.R. part 785); *see also* D.C. Mun. Reg. tit. 4, § 1603.3 (providing that the 1,000 hours requirement of the DC FMLA is also calculated pursuant to FLSA eligibility principles). Particularly relevant here, "Section 207 of the Fair Labor Standards Act . . . excludes from the calculation those hours when no work is performed due to 'vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause.'" *Davis v. George Washington Univ.*, 26 F. Supp. 3d 103, 126 (D.D.C. 2014) (quoting 29 U.S.C. § 207(e)(2)).

Here, CNN argues that Dougherty worked only 217 hours for CNN between March 8, 2015 and March 8, 2016. Def.'s Reply 4 n.7; Supp. Ul-Haque Aff. ¶ 5. In response, Dougherty points to another subsection of the regulations implementing the FMLA providing that, for purposes of calculating the 12-month period an employee has been employed by the employer, weeks of employment include weeks where an employee "is maintained on the payroll for any part of a week, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer (e.g., workers' compensation, group health plan benefits, etc.)." 29 C.F.R. § 825.110(b)(3); *see* Pl.'s Surreply 5. And Dougherty points to employment records showing both that he received a salary, benefits, and that deductions continued to be made to his earnings while he was on leave in 2015, suggesting that he was maintained on the payroll during that period. *See* Martin Dougherty Employee Earnings Record.

Dougherty's argument is unpersuasive because it confuses the standards for calculating the two elements of the test for FMLA eligibility: the 12-month employment period under § 825.110(a)(1), and the 1,250 hours of service under § 825.110(a)(2). The applicable regulation

indicates that, for purposes of determining whether an employee "has been employed by the employer for at least 12 months," 29 C.F.R. § 825.110(a)(1), any week the employee is maintained on payroll is a week of employment, *see id.* § 825.110(b)(3). However, the regulation also makes clear that the 1,250 hours requirement is calculated using FLSA eligibility principles. *See id.* § 825.110(c)(1); *Davis*, 26 F. Supp. 3d at 126. And those principles establish that hours spent on sick leave do not count as hours worked under the FLSA, and, by extension, the FMLA. *See Davis*, 26 F. Supp. 3d at 126 (quoting 29 U.S.C. § 207(e)(2)). Instead, "an employee must have 'actually worked' a minimum of 1250 hours" in order to be eligible under the FMLA. *Id.* at 127 (quoting *Plumley v. S. Container, Inc.*, 303 F.3d 364, 371–72 (1st Cir. 2002)).

Here, it is undisputed that Dougherty did not work while he was out on sick leave between at least March 4, 2015 and November 23, 2015. *See* Dougherty Aff. ¶ 11 (asserting that Dougherty was out on leave between March 2015 and December 2015); Ul-Haque Aff. ¶ 4 (asserting that Dougherty was on leave between March 4, 2015 and November 23, 2015). And, Dougherty's arguments to the contrary notwithstanding, *see* Pl.'s Surreply 3 n.6, the earnings record he provided is somewhat consistent with CNN's assertion that he only worked 217 hours between March 8, 2015 and March 8, 2016. By Dougherty's own calculations, he had worked 273.5 hours between the November 22, 2015 pay period and the January 3, 2016 pay period. *See* Pl.'s Surreply 4. Because CNN has provided evidence that Dougherty worked less than 1,000 hours in the 12-month period preceding March 4, 2016, and because Dougherty does not dispute that calculation besides incorrectly arguing that hours spent on sick leave count towards the 1,250 hours minimum for eligibility, the Court finds that Dougherty was ineligible under the FMLA and DC FMLA as of March 4, 2016.

However, the earnings record provided by Dougherty also indicates that he did not work enough hours to be eligible for FMLA or DC FMLA as of *January 1, 2016*. Because Dougherty was injured on December 31, 2015 and went on leave immediately, he did not work any hours between January 1, 2016 and March 8, 2016. Taking all inferences in Dougherty's favor, and using his calculations, Dougherty worked at most 273.5 hours between March 4, 2015 and December 31, 2015. In order to make the 1,000 hours required for eligibility under the DC FMLA as of January 1, 2016, *see* D.C. Code § 32-501(1), he would have to have worked at least 726.5 hours between January 1, 2015 and March 3, 2015. Similarly, meeting the 1,250 hours requirement of the FMLA would require Dougherty to have worked 981.5 hours between January 1, 2015 and March 3, 2015. The earnings record Dougherty provides unequivocally indicates that he did not: between the January 4, 2015 and March 15, 2015 earning periods, Dougherty worked, *at most*, a total of 651.5 hours.[11] Accordingly, Dougherty was not eligible under either the FMLA or the DC FMLA as of January 1, 2016, and he cannot make out a prima

---

[11] The earnings record includes several different codes for the hours for which Dougherty was compensated. *See* Martin Dougherty Employee Earnings Record. Although Dougherty attempts to explain what those codes stand for in his surreply, he does not provide an explanation for every code. *See* Pl.'s Surreply 4 n.8. In determining the amount of hours Dougherty could at most have worked, the Court added up every hour Dougherty was compensated for in each pay period between January 4, 2015 and March 15, 2015, regardless of whether such hours may or may not qualify as eligible hours under FLSA regulations. Under such a calculation, Dougherty worked 128 hours in the January 4, 2015 pay period; 91 hours in the January 18, 2015 pay period; 107.5 hours in the February 1, 2015 pay period; 114.5 hours in the February 15, 2015 pay period; 117 hours in the March 1, 2015 pay period; and 93.5 hours in the March 15, 2015 pay period; for a total of 651.5 hours.

Because the Court counted in this calculation hours paid that may not have been FLSA-eligible, Dougherty's total amount of hours worked during those pay periods is likely lower. Additionally, earnings statements are often provided on a delayed basis, covering an employee's earnings for a time period ending a week or two prior to the date of the earnings statement. It is therefore possible that hours covered under the January 4, 2015 pay period and March 15, 2015 pay period were not hours Dougherty worked between January 1, 2015 and March 3, 2015, thus further reducing the number of hours he actually worked during that time.

facie case of interference with rights protected by either statute for the denial of leave he requested starting on January 1, 2016.

### 2. CNN Did Not Improperly Designate Dougherty's March 2015 Leave as FMLA Leave

Next, the Court addresses Dougherty's argument that CNN's designation of his March 2015 leave as FMLA leave without his consent was improper. According to Dougherty, his failure to explicitly request FMLA leave when taking medical leave to undergo surgery in March 2015 was tantamount to a request *not* to use up his FMLA leave, which CNN should have respected. *See* Pl.'s Opp'n 22–23 (citing *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243–44 (9th Cir. 2014)). Arguably, this argument points not just to interference with Dougherty's exercise of his FMLA rights in January 2016 (which the Court has already determined fails because Dougherty was ineligible), but also to a claim of interference with Dougherty's exercise of his FMLA rights in *March 2015*, so the Court will address it. The Court disagrees with Dougherty and finds that CNN's designation of the leave as FMLA leave was not improper.

A number of courts have found that employees are allowed to explicitly refuse to take leave they would otherwise be entitled to under the FMLA. *See, e.g.*, *Escriba*, 743 F.3d at 1244 (noting that "there are circumstances in which an employee might seek time off but not intend to exercise his or her rights under the FMLA"); *Gravel v. Costco Wholesale Corp.*, 230 F. Supp. 3d 430, 437 (E.D. Pa. 2017) (finding no FMLA violation when the plaintiff specifically elected not to take FMLA leave, and thus was not protected under the act while on leave); *Skrynnikov v. FNMA*, 226 F. Supp. 3d 26, 38 (D.D.C. 2017) (noting that plaintiff had properly indicated to employer that he was not electing to take DC FMLA leave for rib injury and instead would use vacation time). On the other hand, the Department of Labor indicated in a recent opinion letter

that it disagrees with *Escriba* and regards the FMLA as requiring employees to take FMLA-qualifying leave, with no option to "use non-FMLA leave for an FMLA-qualifying reason." U.S. Dep't of Labor Wage and Hour Division, Opinion Letter FMLA2019-1-A 2 n.3 (Mar. 14, 2019), https://www.dol.gov/whd/opinion/FMLA/2019/2019_03_14_1A_FMLA.pdf.

The Court need not resolve this disagreement here, as the circumstances under which Dougherty took his leave in March 2015 are far from those at issue in cases that have recognized a right to decline to take FMLA leave. Unlike with the plaintiffs in *Escriba*, *Gravel*, and *Skrynnikov*, there is no indication in the record here that Dougherty explicitly declined to take FMLA leave. Instead, Dougherty informed CNN that he was taking medical leave to undergo shoulder surgery in March 2015, *see* Dougherty Aff. ¶ 11, but "never told CNN that he wanted to use his FMLA leave for the injuries he sustained," Pl.'s Opp'n 23. According to Dougherty, this failure to request FMLA leave means that "[i]n practice he declined to use his FMLA leave." *Id.* In other words, Dougherty would have the Court find that FMLA-qualifying leave never actually qualifies under the FMLA unless the employee makes an explicit request for it—presumably using the magic word "FMLA." *See id.* at 23–24. The Court cannot so find. Reading the FMLA this way would run contrary to the intent of the statute, by allowing employers to ignore employees' rights under the act as long as an employee does not make the required explicit request. Here, because Dougherty informed his employer that he was taking extended leave for an FMLA-qualifying reason, and did not indicate that he did not wish to take FMLA leave—or that he wished to use alternative leave instead (e.g. sick leave or accrued vacation time)—the Court has no trouble concluding that CNN rightfully designated the March 2015 leave as FMLA leave.

*3. Retroactively Designating Dougherty's 2015 Leave as DC FMLA Leave Was Not Improper*

Finally, the Court discusses whether CNN's decision to retroactively designate Dougherty's March 2015 leave as DC FMLA leave was improper. As with the designation of that leave as FMLA leave discussed above, this argument arguably points to a claim of interference with Dougherty's exercise of his DC FMLA rights in March 2015, and the Court addresses it. As discussed above in Part II.B., CNN initially designated Dougherty's March 2015 leave as FMLA leave only. *See* February 4, 2016 CNN HR E-Mail. CNN only realized that Dougherty had also been qualified for DC FMLA leave at the time in February 2016, after Dougherty again went on leave because of his knee injury. *See id.* While he does not specifically argue the issue, Dougherty appears to believe that CNN's subsequent retroactive designation of his March 2015 leave as DC FMLA leave was improper. *See* Pl.'s Opp'n 22, 25. The Court disagrees.

Regulations regarding the retroactive designation of FMLA leave are instructive. Pursuant to 29 C.F.R. § 825.301(d), an employer "may retroactively designate leave as FMLA leave with appropriate notice to the employee . . . provided that the employer's failure to timely designate leave does not cause harm or injury to the employee." *Id.* And FMLA regulations also provide that "if an employer that was put on notice that an employee needed FMLA leave failed to designate the leave properly, but the employee's own serious health condition prevented him or her from returning to work during that time period regardless of the designation, an employee may not be able to show that the employee suffered harm as a result of the employer's action," which defeats any interference claim. *Id.* § 825.301(e).

Here, CNN retroactively designated Dougherty's March 2015 leave as DC FMLA leave upon realizing that he qualified for such leave as a D.C. employee. *See* February 4, 2016 CNN

HR E-mail. The failure to designate the leave as DC FMLA leave did not cause Dougherty harm at the time, because he was able to stay out of work for much longer than the 16 weeks allowed under the DC FMLA and was still able to return to work afterwards. *See* Dougherty Aff. ¶ 11 (noting medical leave between March 2015 and October 2015, over seven months). Although Dougherty claims not to have received it, CNN sent him notice of the retroactive designation at his home address. *See* Ul-Haque Aff. ¶ 10; 2016 FMLA Eligibility Letters; Dougherty Dep. 343:5–7, Def.'s Ex. B (acknowledging that Dougherty lives at the address the letters were sent to). And even if the February 4, 2016 notice did not immediately reach him, Dougherty acknowledges being forwarded the notice two weeks later. *See id.* at 363:6–15, Def.'s Ex. B. Given the fact that Dougherty was not harmed by CNN's failure to designate the leave in March 2015 and that the network properly informed him when it retroactively designated the leave, the Court does not find that the retroactive designation was improper. And, finding that there is no remaining dispute of material fact on Dougherty's FMLA and DC FMLA interference claims, the Court grants CNN's motion for summary judgment on those claims.

### D. CNN Is Entitled to Summary Judgment on Dougherty's FMLA and DC FMLA Retaliation Claims Because He Was Ineligible Under Either Statute

Finally, the Court addresses together Dougherty's claims for retaliation under the FMLA and DC FMLA. Dougherty argues that CNN retaliated against him by terminating him after he requested FMLA leave and engaged in FMLA-protected activities. *See* Pl.'s Opp'n 27. CNN contends that Dougherty's retaliation claims must fail because he was ineligible under the FMLA or DC FMLA during the time period for which he made his request. *See* Def.'s Mem. Supp. 12. And CNN argues that it had a legitimate, non-retaliatory reason for terminating Dougherty. *See id.* at 13. The Court agrees with CNN's first argument, and accordingly does not reach CNN's asserted legitimate, non-retaliatory reason.

FMLA retaliation claims follow the *McDonnell* Douglas burden shifting-framework. *See Thomas*, 227 F. Supp. 3d at 100. To make an FMLA retaliation claim, an employee must accordingly first establish his prima facie case, by showing "(1) that he exercised rights afforded by the [FMLA], (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the exercise of his rights and the adverse employment action." *Id.* at 99 (quoting *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009)). The burden then shifts to the employer to provide a legitimate, non-retaliatory reason for the adverse action. *See id.* And once the employer has provided such a reason, "the 'central question at summary judgment becomes whether the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted . . . non-retaliatory reason was not the actual reason and that the employer intentionally . . . retaliated against the employee.'" *Id.* (quoting *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015)).

However, courts have generally recognized that, aside from very limited circumstances, eligibility under the FMLA is a prerequisite to make an FMLA retaliation claim.[12] *See, e.g.*, *Hill*

---

[12] Some courts have held that an employee who is not yet eligible under the FMLA, but who would be eligible at the time his proposed FMLA leave would start, is able to make an FMLA retaliation or interference claim. *See, e.g.*, *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272–73 (11th Cir. 2012). Such an issue is not present here, where Dougherty was ineligible at the time his proposed FMLA and DC FMLA leave would have started on January 1, 2016.

In addition, "[w]hether entitlement to FMLA leave is actually an element of a retaliation claim appears to be an open question of law." *Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 634 (E.D. Pa. 2017). At least one court has found that an employee who is eligible for FMLA leave but not *entitled* to such leave can still bring an FMLA retaliation claim. *See Johnson v. Dollar General*, 880 F. Supp. 2d 967, 990–94 (N.D. Iowa 2012); *see also McArdle v. Town of Dracut*, 732 F.3d 29, 36 (1st Cir. 2013) (declining to pronounce itself on the issue); *Wilkins v. Packerware Corp.*, 260 F. App'x 98, 102–03 (10th Cir. 2008) (same). *But see, e.g.*, *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009) (rejecting FMLA retaliation claim when plaintiff did not request leave on account of serious health issue, and thus was not entitled to FMLA leave in the first place); *Russell v. N. Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003) (finding that "[i]nterference and retaliation claims both require

*v. Walker*, 737 F.3d 1209, 1215 (8th Cir. 2013) (finding that plaintiff who had worked at employer less than 12 months could not make FMLA retaliation claim); *Amsel v. Tex. Water Dev. Bd.*, 464 F. App'x 395, 401 (5th Cir. 2012) (finding that ineligible employee could not make out prima facie case of FMLA retaliation); *Walker v. Elmore Cty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) ("We hold that the [FMLA] does not protect an attempt to exercise a right that is not provided by FMLA, i.e., the right to leave before one becomes eligible therefor."). And here, the evidence undisputedly shows that Dougherty was neither eligible under the FMLA nor under the DC FMLA at the time he made his request for medical leave. Accordingly, the Court finds that his FMLA and DC FMLA retaliation claims fail as a matter of law, and it grants CNN's motion for summary judgment on those claims.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 28) is **GRANTED IN PART AND DENIED IN PART**. Because the Court has now granted summary judgment on both of Dougherty's FMLA claims, there are no remaining federal claims in this lawsuit. The Court therefore directs the parties to submit supplemental briefing on the issue of whether it retains jurisdiction over Dougherty's supplemental, D.C.-law claims. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 30, 2019                                  RUDOLPH CONTRERAS
                                                        United States District Judge

---

the employee to establish a 'serious health condition'"). Other courts have acknowledged *Johnson*'s "thorough and well-reasoned" rationale for allowing retaliation claim by employees not entitled to FMLA leave, *see Isley*, 275 F. Supp. 3d at 634 n.17, and this Court finds it persuasive as well. But again, here the evidence conclusively shows that Dougherty was ineligible for FMLA leave, rather than not entitled to it, and the situation addressed in *Johnson* does not apply to his situation.